NO. 07-02-0156-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



FEBRUARY 25, 2003



______________________________




ERIC DARNELL BOULDWIN, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 230TH DISTRICT COURT OF HARRIS COUNTY;



NO. 873010; HONORABLE BELINDA HILL, JUDGE



_______________________________



Before QUINN and REAVIS, JJ., and BOYD, S.J. (1) 

 On April 19, 2001, upon his plea of guilty, appellant Eric Darnell Bouldwin was
adjudged guilty of the offense of possession of a controlled substance weighing more than
four grams but less than 200 grams. In accordance with a plea bargain, he was placed on
probation (community supervision) for a period of three years. On February 19, 2002, after
hearing, appellant's probation was revoked and he was ordered to serve a three year
sentence in the Institutional Division of the Department of Criminal Justice and in addition
was ordered to pay a fine of $500. Appellant gave timely notice of appeal from the
conviction.

 On January 31, 2003, we received appellant's motion to withdraw his notice of
appeal and to dismiss the appeal. His attorney joined in the motion. Because appellant's
motion meets all the requirements of Texas Rule of Appellate Procedure 42.2(a), and
because this court has not delivered its decision prior to receiving appellant's motion, the
motion must be, and is hereby, granted.

 Having dismissed the appeal at appellant's request, no motions for rehearing will
be entertained and our mandate will issue forthwith.


 John T. Boyd

 Senior Justice


Do not publish.
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2003). 



an>'

var WPFootnote10 = '
Hereafter, for convenience, citation to the Texas Rules of Civil Procedure will be as follows: “Rule\
___.”
\
'

var WPFootnote11 = '
Kile testified the sales reports were an important accounting document which could be used to\
calculate the royalties owed from units sold. He further testified that, under the royalty agreements, royalties\
were based on a percentage of sales–without the sales information, royalties cannot be calculated.
\
'

var WPFootnote12 = '
Kile testified that, in most corporations, if there were no salary agreements, there would, at the least,\
be payroll records.
\
'

var WPFootnote13 = '
There was one balance sheet for April 30, 2004 to May 31, 2004.
\
'

var WPFootnote14 = '
Kincannon and Lewis were personal friends of Dockery. Both had teenage sons who wrestled on\
the high school wrestling team with Dockery’s son. Kincannon and Dockery often traveled together on\
weekend trips to attend their sons’ out-of-town wrestling competitions. \
'

var WPFootnote15 = '
Specifically, Kincannon would “receive a royalty of $1.00 per XM2000 unit sold for the initial 10,000\
pieces, $.50 per the next 20,000, $.25 per unit thereafter for units sold in consideration of advancing a cash\
sum equal to $10,000.”
\
'

var WPFootnote16 = '
On one visit, he testified he observed Dockery in his office through a glass window after being told\
Dockery was not in his office.
\
'

var WPFootnote17 = '
Whether to order a reference of the accounting to a third-party accountant or master is within the\
discretion of the trial court. Shanklin v. Moseley, 287 S.W. 121, 123 (Tex.Civ.App.–Dallas 1926, no writ)\
(questions fit for reference may be determined by the court itself “whenever it can conveniently do so with the\
saving of time and expense”). It is also within the discretion of the trial court to “properly tax the cost of an\
auditor’s fee and all other costs against [a party] who keeps the books of the company in such a manner that\
the appointment of the auditor became necessary . . . and in arriving at an intelligent accounting between the\
parties.” Navarro v. Lamana, 179 S.W. 922, 923-24 (Tex.Civ.App.–El Paso 1915, writ ref’d) (where a party’s\
improper conduct occasions the litigation and the necessity for appointing an auditor, the trial court did not\
improperly exercise its discretion in taxing all costs against him). \
'

var WPFootnote18 = '
In matters of equity, a trial court abuses its discretion if it acts: (1) arbitrarily, unreasonably, or\
without regard to guiding legal principles; or (2) without supporting evidence. Welder v. Green, 985 S.W.2d\
170, 180 (Tex.App.–Corpus Christi 1998, pet. denied).
\
'

var WPFootnote19 = '
An accounting is also defined as a “record of debit and credit entries to cover transactions involving\
a particular item. . . .” Merriam Webster’s Collegiate Dictionary 8 (11th ed. 2003). See also Black’s Law\
Dictionary 18 (8th Ed. 2004). \
'

var WPFootnote20 = '
The “Royalty Summaries” were submitted to prove the truth of the matter asserted, i.e., the royalties\
due. Moreover, the record does not reflect who prepared the “Royalty Summaries” or contain any attempt to\
establish the accuracy of their contents. See Perkins v. Springstun, 557 S.W.2d 343, 345\
(Tex.Civ.App.–Austin 1977, writ ref’d n.r.e.). Kile testified that Xium did not produce any documents to Lewis\
and Kincannon from which he could verify the calculations contained in the “Royalty Summaries.” \
'

function WPShow( WPid, WPtext )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'visible'" );
 else
 {
 if( floatwnd == 0 || floatwnd.closed )
 floatwnd = window.open( "", "comment", "toolbars=0,width=600,height=200,resizable=1,scrollbars=1,dependent=1" );
 floatwnd.document.open( "text/html", "replace" );
 floatwnd.document.write( "
\r\n" );
 floatwnd.document.write( "\r\n" );
 floatwnd.document.write( "
\r\n" );
 floatwnd.document.write( WPtext );
 floatwnd.document.write( '
Close');
 floatwnd.document.write( "
" );
 floatwnd.document.close();
 floatwnd.focus();
 }
}

function WPHide( WPid )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'hidden'" );
}







NO. 07-08-0219-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C 

 JULY 8, 2009

______________________________


MIKE LEWIS AND GERI KINCANNON, APPELLANTS 

V.

XIUM CORPORATION AND GREG A. DOCKERY, APPELLEES

_________________________________

FROM THE 181ST DISTRICT COURT OF POTTER COUNTY;

NO. 94,013-B; HONORABLE JOHN B. BOARD, JUDGE

_______________________________


Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.


MEMORANDUM OPINION


          Appellants, Mike Lewis and Geri Kincannon, appeal from a judgment rendered in
favor of Appellees, Xium Corporation and Greg A. Dockery (Xium),


 during a bench trial of
Lewis and Kincannon’s action for breach of their investment contracts with Xium. Lewis
and Kincannon assert the trial court erred by: (1) failing to order an accounting; (2)
entering a directed verdict at the end of their case-in-chief; (3) denying their motion to
supplement their pleadings; (4) denying their motion for discovery sanctions; (5) denying
their motion for a modification of the Discovery Control Plan; (6) denying their post-trial
motion for sanctions; (7) granting Xium’s untimely objections to discovery; (8) permitting
the admission of “royalty summaries” and amended “royalty summaries” into evidence; (9)
permitting Xium to use documents at trial not produced in response to Lewis and
Kincannon’s discovery requests; and (10) misapplying the rules of civil procedure to a
hearing on sanctions arising out of Xium’s non-production of documents and abuse of the
discovery process. Finding that the trial court erred by not ordering an accounting, we
reverse the judgment of the trial court and remand for further proceedings in conformance
with this opinion. 
Background
          In their first Amended Petition filed January 26, 2006, Lewis and Kincannon alleged
actions for violation(s) of the Texas Business Opportunity Act,


 Securities Act,


 Deceptive
Trade Practices-Consumer Protection Act,


 and they sought damages for fraud and 
breach of contract, as well as seeking to pierce the corporate veil between Xium and its
President, Dockery. Lewis and Kincannon alleged they invested money with Xium


 in
return for royalties from the sale of Xium products or other income, but received no money. 
The petition sought “an accounting of the expenditures, expenses and income of [Xium and
Dockery] involved in the marketing of Spilateral technology


 since the date of [Lewis and
Kincannon’s ] initial investment upon which royalties would be computed.” In addition,
Lewis and Kincannon sought recovery of interest and attorney’s fees.



          On July 21, 2006, Lewis and Kincannon filed traditional and “no-evidence” motions
for summary judgment. On August 22, 2006, Xium and Dockery responded. With their
response, they filed an affidavit by Dockery with attachments entitled “Royalty
Summar[ies].”


 The record does not indicate whether the trial court ever ruled on Lewis
and Kincannon’s motion for summary judgment. 
          I.        PreTrial Pleadings
          On July 24, 2007, the trial court filed its pretrial order requiring discovery (including
supplemental responses) to be completed by November 15, 2007, and pleadings to be
filed by December 14, 2007. The order also set a trial date of February 19, 2008. On
August 21, 2007, Lewis and Kincannon filed a motion to compel and for sanctions alleging
Xium had failed to properly respond to their first request for production of documents.


 On
October 18, 2007, Xium produced a second set of documents. 
          On January 14, 2008, Xium filed an agreed motion to continue the trial date
because the parties’ depositions had not been conducted due to scheduling conflicts. The
following day, the trial court denied that motion.
          On February 1, 2008, Xium filed a motion for leave to file a “no evidence” motion for
summary judgment and, on February 4, 2008, filed a motion for leave to file a traditional
motion for summary judgment. Attached to the traditional motion for summary judgment
was Dockery’s affidavit and the purported “Royalty Summaries” originally filed in August
2006 in response to Lewis and Kincannon’s traditional motion for summary judgment. On
February 15, 2008, Xium faxed an updated copy of the “Royalty Summaries” to Lewis and
Kincannon indicating they intended to use the summaries at trial on February 19.
          On February 11, 2008, Xium filed a second agreed motion for a continuance
premised on the pending motions for summary judgment and they jointly sought to
continue the trial until March 24. On February 13, Lewis and Kincannon filed a motion to
strike Xium’s special exceptions to their first amended petition and Xium’s “no evidence”
and traditional motions for summary judgment. Lewis and Kincannon also filed for leave
to file a second amended petition and sought discovery sanctions under Rules 193.6 and
215 of the Texas Rules of Civil Procedure


 based on Xium’s failure to “fully and
completely” respond to Lewis and Kincannon’s request for production of documents. In
support of their motion for discovery sanctions, Lewis and Kincannon asserted Xium wholly
failed to respond to numerous, specific document requests or produced incomplete
documents or documents for miscellaneous time periods. Lewis and Kincannon also
sought a modification of the discovery plan pursuant to Rule 190.5.
          On February 13, 2008, the trial court denied the second agreed motion for 
continuance. 
 

          II.       Pretrial Hearing
          Prior to trial on February 19, the trial court held a hearing and denied Lewis and
Kincannon’s motions. The trial court denied a third agreed motion for a continuance and
Xium withdrew its motions for summary judgment. 
          The trial court permitted Lewis and Kincannon to put on a bill of exception pertaining
to the trial court’s denial of their discovery motions. In support of their bill, Lewis and
Kincannon called Mark Kile, a certified public accountant, as a witness who had reviewed
Lewis and Kincannon’s request for production of documents and Xium’s response. Kile’s
review of Xium’s response served October 18, 2007, was completed December 22, 2007. 
          In response to Lewis and Kincannon’s request for production, Kile testified Xium
produced some board minutes but the minutes were incomplete. He testified that Xium
produced no committee minutes, retirement plan information, or shareholder stock ledgers. 
Although Xium produced general ledger documents spanning years 1999 through 2005,
he testified the ledgers were in batch format, only a few miscellaneous months were
included in the postings, the “total” column was not included in the documents produced,
and there was no detail of any individual transactions. In his opinion, the general ledger
documents were incomplete, inadequate, and not representative of Xium’s complete
financial history. Further, he testified the production of cash disbursement records was
incomplete; only one accounts receivable aging report was produced; the accounts
payable information was incomplete and meaningless; some sales reports were produced
for two years;


 customer contact information was incomplete; there were no payroll
ledgers, quarterly payroll reports, salary agreements, or employee contracts,


 no
employee benefit or compensation documents; corporate investment documents, property
ownership documents; no loan, guarantee, outstanding commitment or asset pledge
documents; corporate income tax returns; Form 1099's; interim financial statements;



income statements; detailed inventory records; depreciation schedules; invoice copies. 
Although some bank statements were produced, only the front page of the statements was
produced. 
          Kile testified the “Royalty Summaries,” attached to Xium’s summary judgment
pleadings, were encompassed by a specific request for production by Lewis and
Kincannon but were not produced. He indicated that he had no means to verify the
calculations in the “Royalty Summaries” because Xium had not produced the underlying
sales and inventory information or documents. Based upon his review of the documents
produced by Xium, he opined their entire production was “really meaningless . . . [i]t was
like either somebody . . . incompetent put them together or they were intentionally trying
to deceive the plaintiffs, but they were unresponsive to the request . . . [u]seless, just a pile
of paper, general ledgers and tax returns not provided, or the underlying documents,
meaningless.” Thereafter, without granting any further relief, the trial court commenced
the bench trial. 
          III.      Bench Trial
          Kincannon was the first witness. He had known Dockery for approximately twenty
years


 when Dockery approached him about investing in his new corporation, Xium. 
Dockery represented Kincannon would triple a $10,000 investment in Xium in the first year.
          On July 29, 1999, Kincannon agreed to invest $10,000 and entered into a Letter
Agreement. In return for his investment, Kincannon was promised a royalty for each
XM2000 unit sold by Xium not to exceed $30,000 or three hundred percent of his initial
cash investment.


 The Agreement further provided, in pertinent part, as follows:
Xium will keep an accurate account of the product manufactured and sold,
and shall render a statement of such business, in writing to you, within thirty
(30) days after the end of each calendar quarter, and shall, concurrently, pay
to you the full amount of royalty accrued during the calendar quarter. 
 
          At the end of the first year, Kincannon met with Dockery who represented that
Kincannon had earned $30,000 in royalties during the first year. Dockery then displayed
numerous kinds of wireless technology manufactured by Xium. He told Kincannon that he
could apply Kincannon’s $30,000 in royalty earnings toward ownership of a portion of
Xium’s business. Dockery showed Kincannon a chart entitled “Statistics & Projected
Market Penetration.” For each of twenty Xium products, the chart showed the projected
units to be sold and the corresponding “pay zone” for an investor depending on the amount
of their investment. The chart indicated that with a $25,000 investment, Kincannon would
realize $590,559 from Xium’s sales. Dockery represented this amount was the minimum
amount Kincannon would earn if he invested. In return for his investment of $30,000,
Kincannon understood he would receive three percent of Xium’s sales. Kincannon agreed
to purchase the three percent interest.
          On August 11, 2000, Kincannon also executed a second Letter Agreement and
contributed an additional $12,500 in return for a “royalty of $.10 per hardware unit sold
using ‘Spilateral’ technology.” This second Agreement contained the same accounting
provision contained in the first Agreement.
          In February 2001, after obtaining $50,000 from Lewis, Dockery changed his cell
phone number and was unavailable. Although Kincannon attempted to obtain more
information about his investment, Dockery ceased all communication with him. He was
told Dockery was not in his office when Kincannon visited Xium’s offices


 and Dockery did
not return his calls. Kincannon never received any accounting or royalties. Kincannon
testified that he would have never invested in Xium without the assurance of accurate
accountings contained in the Letter Agreements. At the conclusion of his testimony,
Kincannon moved for a trial amendment under Rule 66 to assert a claim for recision. 
Following a hearing, the trial court allowed the amendment seeking an alternative measure
of damages in addition to royalties. 
          Lewis was the next witness. Lewis testified that he had known Dockery for three
years when he invested in Xium. On July 27, 2000, he and his wife, Mary Lewis, entered
into a Letter Agreement with Xium whereby they contributed $25,000 to Xium in return for
a “royalty of $.20 per hardware unit sold using Spilateral technology.” And, on February
28, 2001, they entered into a second Letter Agreement whereby they contributed an
additional $50,000 in return for a royalty of $.045 per hardware unit sold using Spilateral
technology. Both Letter Agreements contained the same accounting provision as the
Kincannon agreements. 
          Prior to investing, Lewis was also given the same chart as Kincannon entitled
“Statistics & Projected Market Penetration.” He was also told that the increase in the value
of his investment represented on the chart was a “low figure”– “what his minimum payout
would be based on his royalties.” The chart indicated that, based upon an investment of
$75,000, his payout would be $2,140,776. He testified Dockery represented that the
chart’s figures were low and that the minimal amount he would make on his investment
would be $2.14 million. Neither did Lewis receive any accounting or royalties. He testified
that, if he had known that Dockery was not going to give him the accounting to which he
was entitled, he would not have invested the money. He also testified he could not say
what royalty was due and owing to him because he had no information what that amount
would be. 
          Lewis and Kincannon rested their case, Xium moved for a directed verdict on all
causes of action, and the trial court granted that motion stating, in pertinent part, as
follows:
With regard to the breach of contract claims, I think there’s some evidence
to support a finding that the contract was breached by failure to give
quarterly accountings and to pay quarterly royalties, and there is some
evidence with respect to recision damages which would be the amounts paid
by the Plaintiffs. But the Plaintiffs have the burden of proof to prove that an
adequate remedy is not available at law, and there’s simply no evidence to
support such a finding. I have no evidence what damages, if any, was
caused by the failure to give quarterly reports. I have no evidence to show
what damage, if any, was caused by the failure to pay royalties. There’s no
evidence that any royalty was even due. And so based on that, I find that
with regard to [Lewis and Kincannon] meeting their burden of proof on the
contract – breach of contract allegations, they have failed to do so and [I] will
grant judgment to the Defendant.
 
          On February 28, 2008, Lewis and Kincannon filed a motion for sanctions and
directed verdict or, alternatively, motion for a new trial. The trial court denied Lewis and
Kincannon’s motion and this appeal followed.

Discussion
          Lewis and Kincannon’s points of error can be distilled to three issues. That is, (1)
whether the trial court erred by failing to order an accounting at the conclusion of their
evidence; (2) whether the trial court erred by directing a verdict in Xium’s favor at the
conclusion of their evidence; and (3) whether, in lieu of ordering further discovery or an
accounting from Xium, the trial court erred by failing to sanction Xium for abusing the
discovery process. 
          Xium asserts that Lewis and Kincannon were not entitled to an accounting because
they did not request one in either their original or first amended petitions. Xium asserts the
“Royalty Summaries” were an accounting. Xium also asserts a directed verdict was proper
because Lewis and Kincannon failed to establish any damages and that the only evidence
of any damages owing to Lewis and Kincannon, the “Royalty Summaries,” were excluded
at the prompting of Lewis and Kincannon . Finally, Xium cross moves for sanctions under
Rule 45 of the Texas Rules of Appellate Procedure asserting that Lewis and Kincannon’s
appeal is “frivolous.”
          I.        Standard of Review
          A directed verdict is proper when the evidence conclusively establishes the right of
the movant to judgment or negates the right of the opponent or when the evidence is
insufficient to raise a material fact issue. Prudential Ins. Co. of America v. Financial
Review Services, Inc., 29 S.W.3d 74, 77 (Tex. 2000). See Cotten v. Weatherford
Bancshares, Inc., 187 S.W.3d 687, 696 (Tex.App.–Fort Worth 2006, pet. denied). If the
question to be decided is whether the losing party at trial raised a material fact issue, we
consider all the evidence in a light most favorable to the party against whom the verdict
was instructed and disregard all the contrary evidence and inferences; we give the losing
party the benefit of all reasonable inferences created by the evidence. Coastal Transport
Co. v. Crown Cent. Petroleum Corp., 136 S.W.3d 227, 234 (Tex. 2004). If we determine
that any conflicting evidence of probative value raises a material fact issue on any theory
of recovery, then the directed verdict is improper because such an issue is for the finder
of fact to resolve. Szczepanik v. First S. Trust Co., 883 S.W.2d 648, 649 (Tex. 1994).
          II.       Accounting
          An accounting may be a particular remedy sought in conjunction with another cause
of action or it may be a suit in equity. Michael v. Dyke, 41 S.w.3d 746, 754
(Tex.App.–Corpus Christi 2001, no pet.). See Sauceda v. Kerlin, 164 S.W.3d 892, 928
(Tex.App.–Corpus Christi 2005), reversed on other grounds, 263 S.W.3d 920 (Tex. 2008). 
In a suit for an accounting, the general rule requires that the right to an accounting must
first be determined and, if found, reference for an account should be ordered.


 Advertising
and Policy Committee of the Avis Rent A Car System v. Avis Rent A Car System, 780
S.W.2d 391, 400 (Tex.App.–Houston [14th Dist.] 1989), vacated and rem’d due to
settlement, 796 S.W.2d 707 (Tex. 1990); Ferguson v. Ferguson, 327 S.W.2d 787, 789
(Tex.Civ.App.–Fort Worth 1959), rev’d on other grounds, 161 Tex. 184, 338 S.W.2d 945
(1960). Where relief is justified, a trial court’s failure to order an accounting is cause for
reversal. Southwest Livestock & Trucking Co. v. Dooley, 884 S.W.2d 805, 811
(Tex.App.–San Antonio 1994, writ denied). 
          Here, an accounting remedy was sought in connection with Lewis and Kincannon’s
claim for breach of their investment contracts. Lewis and Kincannon testified they did not
receive any return under their contracts. Their contracts contained an express provision
requiring periodic accounting by Xium and Xium provided no accounting. Thus, Lewis and
Kincannon’s evidence at trial established Xium had a contractual duty to provide Lewis and
Kincannon with an accounting and Xium breached its duty. 
          An action for accounting may also be founded in equity; T.R.W. Management, Inc.
v. Westwood Shores Property Owners Ass’n, 79 S.W.3d 712, 717 (Tex.App.–Houston [14th
Dist.] 2002, pet. denied); Southwest Livestock, 884 S.W.2d at 810, where the decision
whether to grant the accounting is within the sound discretion of the trial court.


 Michael,
41 S.W.3d at 754; Southwest Livestock, 884 S.W.2d at 810. Such a remedy is proper
when the facts and accounts presented are so complex that adequate relief may not be
obtained at law. Hutchings v. Chevron U.S.A., 862 S.W.2d 752, 762 (Tex.App.–El Paso
1993, writ denied) (citing Richardson v. First Nat’l Life Ins. Co., 419 S.W.2d 836, 838 (Tex.
1967). See also Sauceda, 164 S.W.3d at 928; T.R.W., 79 S.W.3d at 717-718. When a
party can obtain adequate relief at law through the use of standard discovery procedures,
such as requests for production and interrogatories, a trial court does not err in not ordering
an accounting. T.F.W., 79 S.W.3d at 718. 
          Here, regular discovery practices proved inadequate to determine the amount of
royalties, if any, that remained unpaid. Despite Lewis and Kincannon’s detailed request
for production of documents and subsequent motion to compel, the uncontroverted
testimony of Lewis and Kincannon’s accountant, Kile, showed Xium’s production and
supplemental production were “really meaningless” or “useless.” Few, if any, of the
requested documents were produced to Lewis and Kincannon, and those documents
produced were either incomplete for the time period requested or incomplete in
themselves. In addition, Xium objected to each investor request asserting the information
sought was “confidential and proprietary.” Under the circumstances, normal discovery
procedures were inadequate. 
          Xium asserts Lewis and Kincannon were not entitled to the accounting remedy
because they did not request an accounting in their original or first amended petitions. 
Xium’s argument is baseless. In their first amended petition, Lewis and Kincannon sought
“an accounting of the expenditures, expenses and income of [Xium and Dockery] involved
in the marketing of ‘Spilateral’ technology since the date of [Lewis and Kincannon’s] initial
investment upon which royalties would be computed.” Lewis and Kincannon’s first
amended petition sufficiently pled an action for accounting; see Bly v. Harvey, 397 S.W.2d
893, 895 (Tex.Civ.App.–Texarkana 1965, writ ref’d n.r.e.), and damages. T-P Inv. Corp.
v. Winter, 400 S.W.2d 957, 959 (Tex.Civ.App.–Waco 1966, writ dism’d). 
          Xium next asserts that its “Royalty Summaries” were an accounting. An accounting
is a “system of recording and summarizing business and financial transactions in books
and analyzing, verifying and reporting the results.” New Jersey Bank (N.A.) V. Knuckley,
637 S.W.2d 920, 921 (Tex. 1982).


 Dockery’s ex parte affidavit and attached “Royalty
Summaries” were hearsay and, as such, wholly incompetent and without probative force.


 
See Sammons Enterprises, Inc. v. Manley, 540 S.W.2d 751, 757 (Tex.Civ.App.–Texarkana
1976, writ ref’d n.r.e.); Ward v. National Benev. Soc., 155 S.W.2d 994, 996
(Tex.Civ.App.–Galveston 1941, no writ). As such, the “Royalty Summaries” were not an
accounting.
          Xium’s assertion that Lewis and Kincannon failed to prove their damages, and the
trial court’s judgment, assumes the proposition to be proven through an accounting, i.e.,
whether Lewis and Kincannon are entitled to any return. In the absence of adequate
discovery or a verified accounting, Lewis and Kincannon were unable to prove their
damages; see generally Winter, 400 S.W.2d at 959 (“[t]he very nature of the prayer for
accounting [makes] it unnecessary for plaintiff to allege a certain and specific amount of
damages or sum due”), because Xium controls all the necessary information. Lewis and
Kincannon’s evidence shows that, based upon their long-standing personal relationships,
Dockery proposed the sale of the royalties while representing that Lewis and Kincannon
would reap substantial profits, promised accountings, supervised the sale of the
technology, collected the money, and made all the expenditures. Lewis and Kincannon,
on the other hand, were more akin to silent partners. They had no voice in the enterprise
and knew nothing of the financial status or details of Xium’s Spilateral business enterprise. 
As such, absent adequate disclosure or an accounting, Xium held, and continues to hold,
the exclusive power to establish whether there were no profits from the sale of its Spilateral
technology.
           We find the directed verdict was improper because Lewis and Kincannon produced
evidence Xium had a contractual duty to provide an accounting and breached that duty. 
Moreover, regular discovery practices have proven inadequate. Despite their submission
of detailed document requests, Lewis and Kincannon have yet to obtain sufficient
information to determine whether there were profits from the sale of Xium’s Spilateral
technology and royalties due. Under the standards thus established, we conclude the trial
court erred and/or abused its discretion by denying the imposition of an accounting. See
Sauceda, 164 S.W.3d at 928. 
          We sustain Lewis and Kincannon’s first and second points of error. The remaining
points of error are pretermitted; see Tex. R. App. P. 47.1, and Xium’s cross-point for
sanctions is denied. 
CONCLUSION
          The trial court’s judgment is reversed and remanded for further proceedings
consistent with this opinion. 


                                                                           Patrick A. Pirtle

                                                                                 Justice