**SOUTHWEST LIVESTOCK &
TRUCKING COMPANY,
Appellant,**

v.

**Jonnye Glee DOOLEY, Appellee.**

No. 04–92–00645–CV.

Court of Appeals of Texas,
San Antonio.

July 27, 1994.

Rehearing Denied Sept. 7, 1994.

J. Ken Nunley, Nunley & Brant, Boerne, for appellant.

James D. Stewart, James D. Stewart & Associates, Inc., San Antonio, Lavern D. Harris, Harris & Harris, P.C., Kerrville, for appellee.

Before CHAPA, C.J., and RICKHOFF and REEVES, JJ.

## OPINION

REEVES, Justice (Retired).[1]

This appeal involves the distribution of property in a divorce. At issue are assets of a corporation, Southwest Livestock Exchange, Inc., in which the husband, Joe Earl Hargrove, is a stockholder. Southwest Livestock Exchange (hereafter "Southwest Livestock" or "Southwest") and Southwest Livestock & Trucking Co. (hereafter "Southwest Trucking") were intervenors in the trial court and are appellants herein.

Jonnye Glee Hargrove filed suit to divorce Joe. She joined Southwest Livestock and

---

1. Justice Blair Reeves (retired), assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to Tex.Gov't Code Ann. § 74.003(b) (Vernon 1988).

Southwest Trucking in the suit, claiming Southwest Livestock was the alter ego of Joe and that the corporate veil should be pierced and the corporate entity disregarded. She sought a disproportionate division of the community estate. She also asked that the community estate be reimbursed for funds and assets of the estate which were expended to enhance Joe's separate property, i.e., Southwest Livestock Exchange and Southwest Trucking. Lastly, she argued that Joe breached a confidential and fiduciary relationship between the parties that was established at the time of their marriage.

Southwest Livestock and Southwest Trucking answered and filed a counterclaim against Jonnye and a cross-claim against Joe. The corporations alleged that assets held in the personal name of Jonnye and Joe were in reality corporate assets. They also argued that Joe and Jonnye owned only 41% of the corporations and were estopped to deny ownership by the corporation. The corporations further alleged that fraud had been committed against Southwest, and that Joe and Jonnye, as officers and directors of Southwest Livestock, breached the fiduciary responsibility entrusted them. The corporations requested that a constructive trust be imposed, and that there be an accounting of the sums taken from Southwest as well as an accounting of the personal assets held by Joe and Jonnye. Finally, the companies sought damages and recovery of attorney fees.[2]

The trial court granted the divorce and denied all relief requested by appellants. Included in the division of the community property were assets funded, at least in part, by appellants.

Appellants assert the trial court erred in: (1) denying their requested accounting because the evidence shows as a matter of law that Joe and Jonnye breached their fiduciary duty owed to Southwest;

(2) in failing to impose a constructive trust on the assets of the community estate of Joe and Jonnye because the evidence established as a matter of law that such assets were purchased with assets of Southwest Livestock without the consent of the majority of stockholders of Southwest;

(3) in failing to impose constructive trust on the community assets of Joe and Jonnye because the two are estopped .from denying that their community estate was acquired with corporate assets of Southwest; and

(4) in awarding certain assets to Jonnye in the property settlement because the evidence conclusively established that such assets were stolen by Jonnye from Southwest Livestock.

### Standard of Review

■ A two step analysis is necessary to overcome an adverse fact finding as a matter of law. First, the record is examined for evidence that supports the fact finder's conclusion, ignoring all evidence to the contrary. Second, if there is no evidence to support the conclusion of the fact finder, then the entire record must be examined to see if the contrary proposition is established as a matter of law. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989).

■ There is a presumption that the trial court was correct in the division of property, and the court's decision will be accepted by an appellate court unless there is a showing of an abuse of discretion. *See Murff v. Murff*, 615 S.W.2d 696, 700 (Tex.1981).

■ If no findings of fact or conclusions of law are filed, it is assumed by the appellate court that the trial court found all the necessary facts to support the judgment.[3]

---

**2.** Joe answered and filed a counter-petition which alleged various acts of misconduct on the part of Jonnye, including an allegation that Jonnye had converted property of Southwest. He did not, however, perfect an appeal.

**3.** Appellants filed a timely motion for findings of fact and conclusions of law, which was not acted upon by the trial court. Thereafter, a notice of

past due findings and conclusions was filed by appellants. Tex.R.Civ.P. 297. Because appellants do not complain of the trial court's failure to make such findings, however, any objection to trial court's failure to file findings and conclusions was waived. *See Allright, Inc. v. Pearson*, 735 S.W.2d 240 (Tex.1987) (error for court of appeals to consider unassigned points of error); *cf. Fleming v. Taylor*, 814 S.W.2d 89, 90–91 (Tex. App.—Corpus Christi 1991, no writ).

*Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex.1989); *Cellular Marketing, Inc. v. Houston Cellular Tel. Co.,* 838 S.W.2d 331, 333 (Tex.App.—Houston [14th Dist.] 1992, writ denied). Furthermore, the appellate court will affirm the judgment on any legal theory that finds support in the record. *Seaman v. Seaman,* 425 S.W.2d 339, 341 (Tex. 1968); *Owens v. Travelers Ins. Co.,* 607 S.W.2d 634, 637 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.).

Jonnye has not challenged any statements in Joe's original brief concerning the facts or the record, and they will be accepted by the court as correct. TEX.R.APP.P. 74(f). Even so, we have thoroughly examined the statement of facts.

### The Facts

Southwest Livestock was formed in 1967 by Neil, Darrell, and Joe Earl Hargrove. Within a year of its incorporation, Darrell and Joe bought out Neil. A second corporation, Southwest Livestock and Trucking Company, a wholly-owned subsidiary of Southwest Livestock, was formed. Joe was the chief executive of Southwest Livestock; Darrell was the chief executive officer of Southwest Trucking. At this time, Joe was married to Nadine Hargrove. Nadine died, however, and her interest in the corporation passed to the children of Joe and Nadine.

Joe married Jonnye Glee Hargrove. At the time of their marriage Joe owned 25% of Southwest; twenty-five percent was owned by the children of Joe and Nadine, and 50% was owned by Darrell and his wife. Shortly after Joe's marriage to Jonnye, Joe purchased an additional 16% percent of stock in Southwest Livestock from the estate of Nadine, increasing his stock in the corporation to 41 percent. The remaining 9% of the stock is held in trust for the children born of the marriage of Joe and Nadine.

Shortly after the marriage, Jonnye started working in the office of Southwest Livestock. In time she became the office manager. She was elected treasurer and secretary of the corporation, and was a member of its Board of Directors. She also assumed the bookkeeping responsibilities.

Southwest had one checking account which accommodated both the business of the corporation and the personal needs of Joe and Jonnye; each had access to the account. The company maintained an internal accounting system to segregate personal from corporate expenditures, which was to a large measure ignored. Joe was authorized and drew $5,000 a month as salary.

Joe and Jonnye operated a ranch separate and apart from the corporation. Funds of the corporation were used to pay at least some of labor costs of running the ranch. Travel expenses associated with the ranching operation were also charged to the corporation.

Jonnye owned a new Lincoln Continental when she was married. Shortly after the marriage, Jonnye transferred the Lincoln to the corporation. A few months prior to her filing for divorce, Jonnye withdrew from the corporate account approximately $32,000 and purchased a new Cadillac in her name.

There was evidence that various personal expenses of Jonnye and Joe were charged to the corporation. Expenses for the Yacht Club hotel and Bridgepoint Condominiums at South Padre were charged to the corporation as travel and entertainment expenses. Gambling debts incurred by Joe were paid with corporate funds and charged as freight and buying commissions. Incidental expenses like dry cleaning were charged to the corporation and billed as corporate expenses. Jonnye ventured into a small vitamin supplement business which was paid for by the corporation and listed as a corporate veterinarian supplies. The profits, if any, were kept by Jonnye. A short time before Jonnye filed for divorce she wrote herself two checks, one for $21,000 and the other for $25,000. She returned one of the checks when confronted by Joe. An investigation of the corporate books after she left revealed checks written by her in the amount of $94,-000. At least some of this money found its way to an insurance company and a stockbrokerage account which was in Jonnye's name. There was uncontroverted testimony that she invested $75,000 of corporate funds to purchase stock in her name at Hondo National Bank.

At trial the parties agreed that the personal assets of Joe and Jonnye were so intermingled with the corporate assets of Southwest Livestock as to make tracing of the personal assets impossible.

There was evidence that Darrell Hargrove, the brother of Joe and the chief operating executive of Southwest Trucking, was unaware of the personal withdrawals made by Joe and Jonnye. He testified, "he runs his operation and I run mine."

### The Requested Accounting

■ A suit for an accounting is generally founded in equity. *Palmetto Lumber Co. v. Gibbs,* 124 Tex. 615, 80 S.W.2d 742, 748 (1935). The granting of an accounting is within the discretion of the trial court. *Gifford v. Gabbard,* 305 S.W.2d 668, 672 (Tex. Civ.App.—El Paso 1957, no writ). Corporate officers and directors are fiduciaries and transactions in which they receive personal gain in their dealings with the corporation are subject to the closest examination. *See Int'l Bankers Life Ins. Co. v. Holloway,* 368 S.W.2d 567 (Tex.1963).

The relationship of officers and directors to a corporation is a fiduciary one imposing upon them the duty to exercise their powers as officers and directors solely for the benefit of the corporation and its stockholders. Implicit in such duty is that of not exercising their powers as officers and directors to serve their own personal interest at the expense of the corporation and its stockholders.

*Canion v. Texas Cycle Supply, Inc.,* 537 S.W.2d 510, 513 (Tex.Civ.App.—Austin 1976, writ ref'd n.r.e.).

■ When a corporate officer or director diverts assets of the corporation to his own use, he breaches a fiduciary duty of loyalty to the corporation. In such a case, a court in equity may find the officer or director holds the usurped property as a constructive trustee for the corporation. *See Dyer v. Shafer, Gilliland, Davis, McCollum & Ashley, Inc.,* 779 S.W.2d 474, 477 (Tex. App.—El Paso 1989, writ denied). Also, the fiduciary has the burden to establish the fairness of the transaction. *Chien v. Chen,* 759 S.W.2d 484, 495 (Tex.App.—Austin 1988, no writ).

■ The evidence before the trial court clearly declares that Joe and Jonnye ignored their fiduciary responsibilities to the shareholders of Southwest Livestock, a responsibility they both acknowledged. Joe was queried concerning the mischaracterization as corporate expenses of $420,000 in personal expenses. He had no quarrel with the amount, explaining that that was the way they paid their personal obligations—out of the corporate bank account. Jonnye testified that she was just complying with instructions from Joe; but this certainly was not the case when she withdrew funds designated as "gifts," invested in her personal account at Shearson Lehman, and withdrew money for the purchase of a new Cadillac.

We agree with appellants that as a matter of law, Joe and Jonnye breached their fiduciary duties to the corporation and that a substantial amount of property which was divided as community funds was acquired with corporate funds.

### The Implied Finding of Alter Ego

■ But Jonnye contends there is more than ample evidence that the corporate fiction was completely ignored and the trial court's divorce decree should be affirmed under the alter ego theory.

■ Alter ego applies when there is such a unity between the corporation and an individual that the separateness has ceased to exist and holding only the corporation liable would result in injustice. *Castleberry v. Branscum,* 721 S.W.2d 270, 272 (Tex.1986). Because disregarding the corporate fiction is an equitable doctrine, Texas follows a flexible fact-specific approach which focuses on equity. *Castleberry,* 721 S.W.2d at 273.

In *Gentry v. Credit Plan Corp. of Houston,* 528 S.W.2d 571 (Tex.1975), the plaintiff filed suit against Credit Plan of Houston, a subsidiary of Colonel Finance Corporation, because of allegedly unreasonable collection efforts by Credit Plan. Plaintiff joined Colonel Finance as a defendant, alleging it was the alter ego of Colonel Finance. The court held the corporate entity could not be used as a

scheme for fraud or to work an injustice. *Id.* at 575.

In *Castleberry,* the court quoted Dean Hilderbrand, a leading authority on Texas corporation law: "When this [disregarding the corporate fiction] should be done is a question of fact and common sense. The court must weigh the facts and consequences in each case carefully, and common sense and justice must determine [its] decision." *Id.* at 273 (ellipsis in original) (quoting HILDERBRAND, TEXAS CORPORATIONS § 5, at 42 (1942)).

The legal fiction of the corporate entity may be disregarded when there is such unity that the separateness of the corporation has ceased and adherence to the fiction of the separate existence of the corporation would, under the circumstances, sanction a fraud or promote injustice. *Humphrey v. Humphrey,* 593 S.W.2d 824, 826 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ dism'd).

We realize there is sufficient evidence that both Joe and Jonnye used Southwest Livestock as their personal property, but we question the right of Jonnye, as an officer and director of the corporation, to rely upon the equitable the principle of alter ego.

There is no dispute that the trial court, in allocating the community estate, awarded property acquired by funds which Jonnye wrongly appropriated from the corporation. Joe testified that Jonnye had mischaracterized over $420,000 of personal expenses as corporate expenses.

We conclude Jonnye cannot avail herself of the equitable doctrine of alter ego when she participated in the very act which gave rise to her cause of action, disregarding the corporate structure. Both Joe and Jonnye have personally enriched themselves, to the detriment of the remaining stockholders. This is contrary to the concept which is essential to equitable relief: a person seeking equity must come with clean hands. *See Omohundro v. Matthews,* 161 Tex. 367, 341 S.W.2d 401 (1960); *Lovelace v. Bandera Cemetery Ass'n,* 545 S.W.2d 194, 197 n. 3 (Tex.Civ. App.—San Antonio 1976, writ ref'd n.r.e.).

We hold, as a matter of law, that both Joe and Jonnye are accountable to the other stockholders, e.g., the children of Joe and his brother Darrell, and that Jonnye's assertion of alter ego must fail.

### The Remedy

An equitable accounting is within the sound discretion of the trial court. *Gifford v. Gabbard,* 305 S.W.2d at 672. An accounting of the community property of Joe and Jonnye, however, is necessary in order to determine the identity of the property or the amount of money owed Southwest Livestock. *See Richardson v. First Nat'l Life Ins. Co.,* 419 S.W.2d 836, 838 (Tex.1967); *O'Connor v. O'Connor,* 320 S.W.2d 384, 386 (Tex.Civ. App.—Dallas 1959, writ dism'd).

We hold that it was an abuse of discretion for the trial court to render a division of the community property without first ordering a complete accounting of the corporate and personal assets involved.

Moreover, in light of the conclusive evidence set out above, the parties are estopped to deny that their community estate was acquired, at least in part, with assets of Southwest Livestock. *See Cronen v. City of Pasadena,* 835 S.W.2d 206, 211 (Tex.App.— Houston [1st Dist.] 1992, no writ.).

It is the decision of this court that this case must be reversed for an accounting in accordance with this opinion.

Appellants also contend the trial court erred in failing to impose a constructive trust. The equitable remedy of a constructive trust is broad and far reaching and is designed to circumvent technical legal principles of title and ownership in order to reach a just result. *Peirce v. Sheldon Petroleum Co.,* 589 S.W.2d 849, 853 (Tex.Civ.App.— Amarillo 1979, no writ). In *Fitz–Gerald v. Hull,* 150 Tex. 39, 237 S.W.2d 256 (1951) the supreme court explained:

In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments ... or through any other similar means or under any other similar circumstances which render it unconscientious for the holder of legal title to retain and enjoy the beneficial interest,

equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same ... and a court of equity has jurisdiction to reach the property either in the hands of the original wrong-doer ...

*Id.* 237 S.W.2d at 262–63.

A trust beneficiary generally must be able to trace the specific property he seeks to impress with the trust. *Peirce,* 589 S.W.2d at 853. If this is impossible due to commingling, however, the right to a constructive trust is not defeated if the beneficiary can trace to the commingled fund. *Eaton v. Husted,* 141 Tex. 349, 172 S.W.2d 493, 498 (1943); *Peirce,* 589 S.W.2d at 853. If the funds cannot be traced, a cash judgment can be entered to compensate Southwest Livestock.

The judgment is therefore reversed and this cause remanded to the trial court for an accounting of the corporate assets of Southwest Livestock Exchange, Inc. If the trial court deems it necessary to protect the assets of the corporation, a constructive trust may also be imposed. The judgment of divorce is affirmed.