# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00098-CV

**David T. Phillips, Appellant**

**v.**

**Estate of Phillip O. Poulin, Appellee**

### FROM PROBATE COURT NO. 1 OF TRAVIS COUNTY, NO. 73677-a, HONORABLE GUY S. HERMAN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

David T. Phillips appeals from a judgment awarding the estate of a business partner, Phillip O. Poulin, $21,025.82—representing $32,000 in attorney's fees, net of credits and offsets—on an accounting claim brought by the Estate. In four issues, Phillips argues that the probate court erred in awarding the accounting and attorney's fees because he had previously discharged any duty to provide an accounting to Poulin or his Estate, that the court erred in imposing the entire amount of the attorney's fee award against him, and that the evidence was insufficient to support the fee award. We affirm the probate court's judgment.

This is one of two appeals arising from a dispute between Phillips and the Estate. During his lifetime, Poulin invested in two real estate-related general partnerships with Phillips, Hill

Country and South Cross,[1] and owned 50 percent shares with Phillips in a company, Y&O, Inc., that managed properties including those owned by the two partnerships. Phillips kept the books for these entities, though it is undisputed that both men had access to the business's books and bank accounts, and could issue checks. Poulin died in November 1998. Upon his death, it is undisputed that the Estate succeeded to Poulin's interests in the three businesses.

The probate court heard testimony that, while attempting to settle Poulin's affairs, Poulin's heirs discovered information causing them to suspect Phillips of improprieties. This included: (1) Phillips having possibly obtained a refund of payroll taxes that Poulin had paid while acting as general contractor in repairing fire damage at one of the partnership properties, causing the Estate to incur liability for both the taxes and penalties; (2) Phillips's potential diversion of corporate opportunities from Y&O by causing termination of management contracts with clients that subsequently executed contracts with a management company owned by Phillips but not Poulin; and (3) Phillips's withholding sums due to the Estate in the guise of obtaining repayment of a $51,000 "loan" he claimed Poulin had obtained from one of the businesses. Poulin's daughter, Susan, testified that the Estate encountered difficulties in obtaining information and documents from Phillips concerning these transactions.

The Estate eventually obtained counsel and sued Phillips, alleging "a genuine dispute and controversy between these parties as to the amounts due the Estate" and seeking an accounting of the businesses' accounts between the parties. Phillips counterclaimed, seeking amounts he

---

[1] Hill Country owned a San Marcos apartment complex while South Cross owned a South Austin commercial development.

claimed Poulin and the Estate owed the businesses. The Estate later amended its petition to allege claims for breach of fiduciary duty, and sought damages and a constructive trust on certain property. The probate court severed the Estate's accounting claim from the parties' breach-of-fiduciary-duty claims and Phillips's counterclaims. The accounting claim was tried to the probate court in August 2003, but the court did not render a final judgment in the cause until February 2005, following trial of the severed breach-of-fiduciary duty claims and counterclaims, at which time the court signed final judgments in both causes. Phillips, as well as the Estate, appealed the final judgment on the severed claims, and we are contemporaneously issuing our opinion and judgment in that proceeding.[2]

The final judgment in the accounting cause recited that, at the conclusion of trial, the probate court had ordered Phillips "to produce an accounting and awarded Plaintiff $32,000 as reasonable and necessary attorney's fees" and that, "[t]he accounting was timely made." At that time, the court had ordered that the attorney's fees, as well as the cost of the accounting, be borne by the partnerships (i.e., Phillips, the Estate, and any other partners would pay the fees according to their proportionate ownership shares). In the judgment, however, the court held that"[a]fter reconsidering the allocation of attorney's fees," it would impose the attorney's fee award against Phillips alone. The court credited $7,888 that Phillips had paid as his proportionate share of the attorney's fee award and offset the Estate's proportionate share of the accounting expenses, $3,086.18, leaving a net judgment against Phillips of $21,025.82. Findings of fact were neither requested nor filed.

---

[2] *Phillips v. Estate of Phillip O. Poulin*, No. 03-05-00099-CV (Tex. App.—Austin Oct. 12, 2007, no pet. h.).

In his first two issues, Phillips argues that the probate court erred in ordering an accounting because Phillips and the Estate both had full access to the businesses' books, because Phillips had discharged his duty to provide accountings pursuant to the businesses' governing agreements, and because he had previously produced the same information in discovery that the court later determined to be a sufficient accounting.

The parties stipulated that each of the agreements governing their three jointly-owned businesses contained a provision like the following:

> A complete accounting of the Partnership affairs as of the close of business on the last day of each quarter shall be rendered to each PARTNER within 15 days after the close of said period. On each such accounting being made, the net profits of the Partnership shall be distributed to the PARTNERS as herein provided to the extent that cash is available for each distribution.[3]

The partnership agreements further provide that "[t]he prevailing party in any litigation between the parties hereto . . . shall be entitled to reasonable attorney's fees incurred by the prevailing party." *See also* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 1997).

At trial, Phillips presented undisputed evidence that during Poulin's lifetime, in compliance with the governing agreements, he had provided Poulin monthly operating statements (income and expense statements and a balance sheet) and complete tax returns. The evidence was also undisputed that Poulin at all times had full access to the businesses' books. Phillips also

---

[3] During trial of the accounting claim, the sole partnership agreement introduced into evidence was that of the Hill Country. However, the parties stipulated that parallel provisions were contained in the South Cross partnership agreement, as well as in the agreement governing Y&O, Inc.

4

testified that while in California for Poulin's funeral, he had met with the Poulin heirs and given them financial information concerning the businesses, and Susan Noble, Poulin's daughter, acknowledged that the heirs received balance sheets, general ledgers, and operating statements during that meeting. Phillips testified that he had thereafter continued to provide the Estate tax information as he had previously done for Poulin, and that his heirs continued to have access to the books. But Phillips's counsel at the time conceded that the only "accountings" that the Estate had received going forward was a right of access to the businesses' books,[4] not the periodic accountings

---

[4] Counsel and the probate court had the following exchange:

THE COURT: Have accountings been tendered to the estate?

[COUNSEL]: Your Honor, it is our position that they have. It's our position that accountings of all the financial transactions have continued to be provided. In fact, that was the reason that I –

THE COURT: Can I see – I keep – they say they didn't get an accounting and you say you've provided one.

[COUNSEL]: Your Honor, what we're doing – when I say –

THE COURT: Letting someone have access to the records is not an accounting.

[COUNSEL]: I understand, Judge. And that's what I'm referring to.

THE COURT: Having access to the records?

[COUNSEL]: Yes, sir.

THE COURT: Well, if all of the agreements on all these properties are the same, then my ruling is – and that you do – the partnerships owe a complete accounting to the independent executor of the estate from the date of death forward . . . .

required by the governing agreements. Again, it was undisputed that the Estate had succeeded to Poulin's rights under the governing agreements, and also that both partnerships remained in existence through the time of trial, though their respective assets had been sold between Poulin's death and trial.[5] Like the probate court, we conclude that merely "[l]etting someone have access to the records is not an accounting" that satisfied Phillips's obligations under the governing agreements. On this record, there was sufficient evidence to support the probate court's implied finding that Phillips had failed to provide the Estate periodic "complete accountings" of the businesses as required by their governing agreements.

Additionally, we observe that while the Estate, as Poulin's successor, was entitled to a type of "complete accounting" under the governing agreements, an action for an accounting is generally founded in equity. *See T.F.W. Mgt., Inc. v. Westwood Shores Prop. Owners Ass'n*, 79 S.W.3d 712, 717 (Tex. App.—Houston [14th Dist.] 2002, pet. denied); *Southwest Livestock & Trucking Co. v. Dooley*, 884 S.W.2d 805, 809 (Tex. App.—San Antonio 1994, writ denied) (citing *Palmetto Lumber Co. v. Gibbs*, 80 S.W.2d 742, 748 (Tex. 1935)). The granting of such a remedy is within a trial court's sound discretion. *Dooley*, 884 S.W.2d at 810. To be entitled to an accounting, a plaintiff generally must have a contractual or fiduciary relationship with the party from whom the plaintiff seeks the accounting. *T.F.W. Mgt., Inc.*, 79 S.W.3d at 717. There is no dispute that such a relationship exists here: Phillips and the Estate agree that they are partners and share contractual and fiduciary relationships. *See also* Tex. Rev. Civ. Stat. Ann. art. 6132b-4.04(b)(1)

---

[5] It also appears that Y&O, Inc., had continued in existence for some time after Poulin's death.

(partner's statutory duty of loyalty includes accounting to the partnership), 6132(b)-4.06(b) (statutory claim for legal or equitable relief to enforce accounting right) (West Supp. 2006). We accordingly reject Phillips's premise that the sole "accounting" the Estate could seek was that provided under the governing agreements.

We also hold that the probate court did not abuse its discretion in ordering an accounting. As noted, the court heard evidence regarding possible improprieties by Phillips in managing the businesses' books and that a dispute had arisen concerning the parties' respective liabilities to each other. There was also testimony that Phillips had been less than forthcoming in providing information to the Estate and that which was provided—chiefly, certain ledgers that were introduced into evidence—was confusing, inexplicable, and suggestive of other possible improprieties.[6] Discovery, the heirs insisted, had not enabled them to sort out this tangled web of transactions. An equitable accounting is proper where the facts and accounts presented are so complex that the plaintiff cannot obtain adequate relief at law through standard discovery procedures. *T.F.W. Mgt., Inc.*, 79 S.W.3d at 717-18. On this record, the probate court did not abuse its discretion in ordering one here.

Phillips nonetheless urges that the probate court erred (or abused its discretion) in ordering an accounting and awarding attorney's fees because the accounting the court ultimately deemed sufficient merely duplicated his prior discovery production. On or before September 2001, Phillips produced disks containing what he represents were a general ledger of the businesses

---

[6] There was also evidence that whatever information Phillips might previously have provided Poulin had been lost or discarded.

involving Poulin. Later, at the conclusion of the accounting trial, the probate court had orally ordered Phillips to produce accountings on all three businesses within sixty days. Phillips produced hard copies of tax returns for the businesses and printouts of their general ledgers and balance sheets. The Estate, complaining chiefly that it was also entitled to "backup" documents from which the accuracy of the ledger entries could be verified, filed a motion to enforce the probate court's prior oral rulings. Phillips presented the testimony of his accountant, who explained the contents of the general ledgers, their relationship to the balance sheets, and the manner in which accounting adjustments were made. He further explained that the documents had been generated by Phillips's bookkeeper, who printed out the records she had on her computer. At the conclusion of the testimony, the probate court ordered that Phillips additionally turn over trial balances and "also those sheets that showed the liabilities and the adjustments" made to the general ledger. With that, the court concluded that "what has been turned over is sufficient from my review to be an accounting." Rejecting the Estate's position, it added that, "I didn't ask for an audit, I just asked for an accounting of all the things, transactions in the actions."

Phillips, through new counsel, insists that this record establishes that the accounting found sufficient by the probate court consisted merely of computer printouts of the identical information that he had previously produced in electronic form. We disagree. We first observe that the probate court ordered Phillips to provide certain additional documents—the trial balances and sheets showing adjustments—beyond the general ledgers that Phillips claims he previously produced. Moreover, the record is, at best, ambiguous regarding whether the general ledgers included in the accounting were the same that Phillips had previously produced. Although Phillips's

8

accountant explained that the documents had been printed from *some* computer files that Phillips's bookkeeper was maintaining at the time of the hearing, the witness was never asked to elaborate regarding whether or how they compared to the content or time period covered by the prior production. We can find no support in this record for Phillips's repeated assertions that the "computer files" that were the source of some of the 2003 accounting were identical to those copied onto the disks in the 2001 production.[7] We overrule Phillips's first and second issues.

In his third issue, Phillips asserts that the probate court erred in ordering that the entire attorney's fee be borne by him rather than the businesses. As noted, the partnership agreements provide that "[t]he prevailing party in any litigation between the parties hereto . . . shall be entitled to reasonable attorney's fees incurred by the prevailing party." *See also* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8). We overrule Phillips's third issue.

In his fourth issue, Phillips argues that there is legally and factually insufficient evidence to support the amount of attorney's fees awarded. The Estate's counsel, Barry Bishop, testified as to the amount of the Estate's attorney's fees. Mr. Bishop testified that he has been licensed to practice law in Texas since 1967 and that, since that time, he has been engaged in a general civil and appellate practice. He stated that he is "familiar with and knowledgeable of the standard and usual customary rates for lawyers in Austin, Travis County, Texas" and that he "tr[ies] to base [his] billing practices on those standards." Bishop testified, "In my experience the amount of reasonable and necessary attorney's fees expended in this case to date is approximately $52,000"

---

[7] We thus need not address whether the earlier production was inadequate merely because the electronic data was in a computer program—Yardi—that the Estate claims it couldn't access.

9

and that "75 percent of that amount would be attributable to the matters relating to an accounting." He discussed the nature of the services his firm had provided[8] and stated, "I've kept track of my hours through that point in time, and as of where I think the conclusion of this trial will be, the total will be about $52,000." This uncontroverted testimony is legally and factually sufficient to support the attorney's fees award. *See Texas Commerce Bank v. New*, 3 S.W.3d 515, 517-518 (Tex. 1999) (per curiam) (finding similar testimony sufficient to support attorney's fees award). We overrule Phillips's fourth issue.

Having overruled all of Phillips's issues, we affirm the judgment of the probate court.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed:   October 12, 2007

---

[8]  Specifically, Bishops testified:

The services today have been the attempts to secure discovery relating to these matters; examination of the documents produced by my clients as well as some documents produced by Mr. Phillips, which comprise about three file drawers in our offices; general examination of the law relating to partnerships and so forth, most of which I was already familiar with; written discovery which was sent out; and oral discovery which has consisted of the depositions—deposition of Mr. Phillips. I've also had a mediation . . . ; [and] preparation for the mediation.