TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-05-00098-CV






David T. Phillips, Appellant


v.


Estate of Phillip O. Poulin, Appellee






FROM PROBATE COURT NO. 1 OF TRAVIS COUNTY, NO. 73677-a, 

HONORABLE GUY S. HERMAN, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 David T. Phillips appeals from a judgment awarding the estate of a business partner,
Phillip O. Poulin, $21,025.82--representing $32,000 in attorney's fees, net of credits and
offsets--on an accounting claim brought by the Estate. In four issues, Phillips argues that the
probate court erred in awarding the accounting and attorney's fees because he had previously
discharged any duty to provide an accounting to Poulin or his Estate, that the court erred in imposing
the entire amount of the attorney's fee award against him, and that the evidence was insufficient to
support the fee award. We affirm the probate court's judgment. 

 This is one of two appeals arising from a dispute between Phillips and the Estate. 
During his lifetime, Poulin invested in two real estate-related general partnerships with Phillips, Hill
Country and South Cross, (1) and owned 50 percent shares with Phillips in a company, Y&O, Inc., that
managed properties including those owned by the two partnerships. Phillips kept the books for these
entities, though it is undisputed that both men had access to the business's books and bank accounts,
and could issue checks. Poulin died in November 1998. Upon his death, it is undisputed that the
Estate succeeded to Poulin's interests in the three businesses. 

 The probate court heard testimony that, while attempting to settle Poulin's affairs, 
Poulin's heirs discovered information causing them to suspect Phillips of improprieties. This
included: (1) Phillips having possibly obtained a refund of payroll taxes that Poulin had paid while
acting as general contractor in repairing fire damage at one of the partnership properties, causing the
Estate to incur liability for both the taxes and penalties; (2) Phillips's potential diversion of corporate
opportunities from Y&O by causing termination of management contracts with clients that
subsequently executed contracts with a management company owned by Phillips but not Poulin; and
(3) Phillips's withholding sums due to the Estate in the guise of obtaining repayment of a $51,000
"loan" he claimed Poulin had obtained from one of the businesses. Poulin's daughter, Susan,
testified that the Estate encountered difficulties in obtaining information and documents from
Phillips concerning these transactions. 

 The Estate eventually obtained counsel and sued Phillips, alleging "a genuine dispute
and controversy between these parties as to the amounts due the Estate" and seeking an accounting
of the businesses' accounts between the parties. Phillips counterclaimed, seeking amounts he
claimed Poulin and the Estate owed the businesses. The Estate later amended its petition to allege
claims for breach of fiduciary duty, and sought damages and a constructive trust on certain property. 
The probate court severed the Estate's accounting claim from the parties' breach-of-fiduciary-duty
claims and Phillips's counterclaims. The accounting claim was tried to the probate court in August
2003, but the court did not render a final judgment in the cause until February 2005, following trial
of the severed breach-of-fiduciary duty claims and counterclaims, at which time the court signed
final judgments in both causes. Phillips, as well as the Estate, appealed the final judgment on the
severed claims, and we are contemporaneously issuing our opinion and judgment in that proceeding. (2) 

 The final judgment in the accounting cause recited that, at the conclusion of trial, the
probate court had ordered Phillips "to produce an accounting and awarded Plaintiff $32,000 as
reasonable and necessary attorney's fees" and that, "[t]he accounting was timely made." At that
time, the court had ordered that the attorney's fees, as well as the cost of the accounting, be borne
by the partnerships (i.e., Phillips, the Estate, and any other partners would pay the fees according to
their proportionate ownership shares). In the judgment, however, the court held that"[a]fter
reconsidering the allocation of attorney's fees," it would impose the attorney's fee award against
Phillips alone. The court credited $7,888 that Phillips had paid as his proportionate share of the
attorney's fee award and offset the Estate's proportionate share of the accounting expenses,
$3,086.18, leaving a net judgment against Phillips of $21,025.82. Findings of fact were neither
requested nor filed. 

 In his first two issues, Phillips argues that the probate court erred in ordering an
accounting because Phillips and the Estate both had full access to the businesses' books, because
Phillips had discharged his duty to provide accountings pursuant to the businesses' governing
agreements, and because he had previously produced the same information in discovery that the
court later determined to be a sufficient accounting. 

 The parties stipulated that each of the agreements governing their three jointly-owned
businesses contained a provision like the following: 



 A complete accounting of the Partnership affairs as of the close of business on the
last day of each quarter shall be rendered to each PARTNER within 15 days after the
close of said period. On each such accounting being made, the net profits of the
Partnership shall be distributed to the PARTNERS as herein provided to the extent
that cash is available for each distribution. (3)



The partnership agreements further provide that "[t]he prevailing party in any litigation between the
parties hereto . . . shall be entitled to reasonable attorney's fees incurred by the prevailing party." 
See also Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 1997). 

 At trial, Phillips presented undisputed evidence that during Poulin's lifetime, in
compliance with the governing agreements, he had provided Poulin monthly operating statements
(income and expense statements and a balance sheet) and complete tax returns. The evidence was
also undisputed that Poulin at all times had full access to the businesses' books. Phillips also
testified that while in California for Poulin's funeral, he had met with the Poulin heirs and given
them financial information concerning the businesses, and Susan Noble, Poulin's daughter,
acknowledged that the heirs received balance sheets, general ledgers, and operating statements
during that meeting. Phillips testified that he had thereafter continued to provide the Estate tax
information as he had previously done for Poulin, and that his heirs continued to have access to the
books. But Phillips's counsel at the time conceded that the only "accountings" that the Estate had
received going forward was a right of access to the businesses' books, (4) not the periodic accountings
required by the governing agreements. Again, it was undisputed that the Estate had succeeded to
Poulin's rights under the governing agreements, and also that both partnerships remained in
existence through the time of trial, though their respective assets had been sold between Poulin's
death and trial. (5) Like the probate court, we conclude that merely "[l]etting someone have access
to the records is not an accounting" that satisfied Phillips's obligations under the governing
agreements. On this record, there was sufficient evidence to support the probate court's implied
finding that Phillips had failed to provide the Estate periodic "complete accountings" of the
businesses as required by their governing agreements. 

 Additionally, we observe that while the Estate, as Poulin's successor, was entitled to
a type of "complete accounting" under the governing agreements, an action for an accounting is
generally founded in equity. See T.F.W. Mgt., Inc. v. Westwood Shores Prop. Owners Ass'n,
79 S.W.3d 712, 717 (Tex. App.--Houston [14th Dist.] 2002, pet. denied); Southwest Livestock
& Trucking Co. v. Dooley, 884 S.W.2d 805, 809 (Tex. App.--San Antonio 1994, writ denied) (citing
Palmetto Lumber Co. v. Gibbs, 80 S.W.2d 742, 748 (Tex. 1935)). The granting of such a remedy
is within a trial court's sound discretion. Dooley, 884 S.W.2d at 810. To be entitled to an
accounting, a plaintiff generally must have a contractual or fiduciary relationship with the party from
whom the plaintiff seeks the accounting. T.F.W. Mgt., Inc., 79 S.W.3d at 717. There is no dispute
that such a relationship exists here: Phillips and the Estate agree that they are partners and share
contractual and fiduciary relationships. See also Tex. Rev. Civ. Stat. Ann. art. 6132b-4.04(b)(1)
(partner's statutory duty of loyalty includes accounting to the partnership), 6132(b)-4.06(b) (statutory
claim for legal or equitable relief to enforce accounting right) (West Supp. 2006). We accordingly
reject Phillips's premise that the sole "accounting" the Estate could seek was that provided under
the governing agreements.

 We also hold that the probate court did not abuse its discretion in ordering an
accounting. As noted, the court heard evidence regarding possible improprieties by Phillips in
managing the businesses' books and that a dispute had arisen concerning the parties' respective
liabilities to each other. There was also testimony that Phillips had been less than forthcoming in
providing information to the Estate and that which was provided--chiefly, certain ledgers that were
introduced into evidence--was confusing, inexplicable, and suggestive of other possible
improprieties. (6) Discovery, the heirs insisted, had not enabled them to sort out this tangled web of
transactions. An equitable accounting is proper where the facts and accounts presented are so
complex that the plaintiff cannot obtain adequate relief at law through standard discovery
procedures. T.F.W. Mgt., Inc., 79 S.W.3d at 717-18. On this record, the probate court did not abuse
its discretion in ordering one here. 

 Phillips nonetheless urges that the probate court erred (or abused its discretion) in
ordering an accounting and awarding attorney's fees because the accounting the court ultimately
deemed sufficient merely duplicated his prior discovery production. On or before September 2001,
Phillips produced disks containing what he represents were a general ledger of the businesses
involving Poulin. Later, at the conclusion of the accounting trial, the probate court had orally
ordered Phillips to produce accountings on all three businesses within sixty days. Phillips produced
hard copies of tax returns for the businesses and printouts of their general ledgers and balance sheets. 
The Estate, complaining chiefly that it was also entitled to "backup" documents from which the
accuracy of the ledger entries could be verified, filed a motion to enforce the probate court's prior
oral rulings. Phillips presented the testimony of his accountant, who explained the contents of the
general ledgers, their relationship to the balance sheets, and the manner in which accounting
adjustments were made. He further explained that the documents had been generated by Phillips's
bookkeeper, who printed out the records she had on her computer. At the conclusion of the
testimony, the probate court ordered that Phillips additionally turn over trial balances and "also those
sheets that showed the liabilities and the adjustments" made to the general ledger. With that, the
court concluded that "what has been turned over is sufficient from my review to be an accounting." 
Rejecting the Estate's position, it added that, "I didn't ask for an audit, I just asked for an accounting
of all the things, transactions in the actions." 

 Phillips, through new counsel, insists that this record establishes that the accounting
found sufficient by the probate court consisted merely of computer printouts of the identical
information that he had previously produced in electronic form. We disagree. We first observe that
the probate court ordered Phillips to provide certain additional documents--the trial balances and
sheets showing adjustments--beyond the general ledgers that Phillips claims he previously
produced. Moreover, the record is, at best, ambiguous regarding whether the general ledgers
included in the accounting were the same that Phillips had previously produced. Although Phillips's
accountant explained that the documents had been printed from some computer files that Phillips's
bookkeeper was maintaining at the time of the hearing, the witness was never asked to elaborate
regarding whether or how they compared to the content or time period covered by the prior
production. We can find no support in this record for Phillips's repeated assertions that the
"computer files" that were the source of some of the 2003 accounting were identical to those copied
onto the disks in the 2001 production. (7) We overrule Phillips's first and second issues.

 In his third issue, Phillips asserts that the probate court erred in ordering that the
entire attorney's fee be borne by him rather than the businesses. As noted, the partnership
agreements provide that "[t]he prevailing party in any litigation between the parties hereto . . . shall
be entitled to reasonable attorney's fees incurred by the prevailing party." See also Tex. Civ. Prac.
& Rem. Code Ann. § 38.001(8). We overrule Phillips's third issue.

 In his fourth issue, Phillips argues that there is legally and factually insufficient
evidence to support the amount of attorney's fees awarded. The Estate's counsel, Barry Bishop,
testified as to the amount of the Estate's attorney's fees. Mr. Bishop testified that he has been
licensed to practice law in Texas since 1967 and that, since that time, he has been engaged in a
general civil and appellate practice. He stated that he is "familiar with and knowledgeable of the
standard and usual customary rates for lawyers in Austin, Travis County, Texas" and that he "tr[ies]
to base [his] billing practices on those standards." Bishop testified, "In my experience the amount
of reasonable and necessary attorney's fees expended in this case to date is approximately $52,000"
and that "75 percent of that amount would be attributable to the matters relating to an accounting." 
He discussed the nature of the services his firm had provided (8) and stated, "I've kept track of my
hours through that point in time, and as of where I think the conclusion of this trial will be, the total
will be about $52,000." This uncontroverted testimony is legally and factually sufficient to support
the attorney's fees award. See Texas Commerce Bank v. New, 3 S.W.3d 515, 517-518 (Tex. 1999)
(per curiam) (finding similar testimony sufficient to support attorney's fees award). We overrule
Phillips's fourth issue.

 Having overruled all of Phillips's issues, we affirm the judgment of the probate court.



 Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop 

Affirmed

Filed: October 12, 2007
1. Hill Country owned a San Marcos apartment complex while South Cross owned a South
Austin commercial development. 
2. Phillips v. Estate of Phillip O. Poulin, No. 03-05-00099-CV (Tex. App.--Austin
Oct. 12, 2007, no pet. h.).
3. During trial of the accounting claim, the sole partnership agreement introduced into
evidence was that of the Hill Country. However, the parties stipulated that parallel provisions were
contained in the South Cross partnership agreement, as well as in the agreement governing
Y&O, Inc. 
4. Counsel and the probate court had the following exchange:


 THE COURT: Have accountings been tendered to the estate?

 

 [COUNSEL]: Your Honor, it is our position that they have. It's our position
that accountings of all the financial transactions have
continued to be provided. In fact, that was the reason that I - 

 

 THE COURT: Can I see - I keep - they say they didn't get an accounting and
you say you've provided one.

 

 [COUNSEL]: Your Honor, what we're doing - when I say - 

 

 THE COURT: Letting someone have access to the records is not an
accounting.

 

 [COUNSEL]: I understand, Judge. And that's what I'm referring to.

 

 THE COURT: Having access to the records?

 

 [COUNSEL]: Yes, sir.

 

 THE COURT: Well, if all of the agreements on all these properties are the
same, then my ruling is - and that you do - the partnerships
owe a complete accounting to the independent executor of the
estate from the date of death forward . . . . 
5. It also appears that Y&O, Inc., had continued in existence for some time after
Poulin's death.
6. There was also evidence that whatever information Phillips might previously have
provided Poulin had been lost or discarded. 
7. We thus need not address whether the earlier production was inadequate merely because
the electronic data was in a computer program--Yardi--that the Estate claims it couldn't access. 
 
8. Specifically, Bishops testified:


 The services today have been the attempts to secure discovery relating to these
matters; examination of the documents produced by my clients as well as some
documents produced by Mr. Phillips, which comprise about three file drawers in our
offices; general examination of the law relating to partnerships and so forth, most of
which I was already familiar with; written discovery which was sent out; and oral
discovery which has consisted of the depositions--deposition of Mr. Phillips. I've
also had a mediation . . . ; [and] preparation for the mediation.