

NUMBER 13-09-00703-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**IN THE MATTER OF THE MARRIAGE OF AMY LASSMANN
AND CHARLES A. LASSMANN, JR. AND
IN THE INTEREST OF C. J. L., A CHILD**

**On appeal from the 24th District Court
of Victoria County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Garza
Memorandum Opinion by Justice Garza**

By one issue, appellant Charles A. Lassmann, Jr., contends that the trial court abused its discretion when it based his child support obligation on his income-earning potential prior to his incarceration. We affirm.

## I. BACKGROUND

After being released from prison on parole, Charles married Amy Lassmann on

April 29, 2004. Charles later adopted Amy's daughter, C.J., from a prior relationship.[1] In January of 2009, Charles was incarcerated in the Nueces County Jail for assaulting Amy. During his incarceration, Charles's parole was revoked due to the assault on Amy and also for a driving-while-intoxicated offense. Charles is not scheduled to be released from prison until 2013.

On June 22, 2009, Amy filed for divorce. The trial court held a hearing on the divorce on October 26, 2009. Charles, due to his incarceration, did not attend but was represented by counsel. At the hearing, the court heard testimony to determine a child support award for C.J., who was fifteen years old at the time.[2] Amy testified that, prior to his incarceration, Charles worked at various oil companies as a directional driller earning $26.00 per hour, and that he earned more when he worked overtime. Amy also testified that Charles did not own any real property; that creditors repossessed his pickup truck and motorcycle; and that they had numerous community debts, including $4,000 owed to the IRS for penalties associated with the tax years 2006 and 2007.

Amy asked the trial court to base Charles's child support obligation on his earning potential—the $26.00 per hour wage he had earned prior to being incarcerated for committing assault. She argued that this award was appropriate because Charles was voluntarily "underemployed" by committing an offense which led to his incarceration. However, Charles's attorney argued that child support should be based on the federal minimum wage because Charles was incarcerated prior to the divorce proceedings and had no income-earning ability or other financial assets, as evidenced by the testimony on

---

[1] To protect the privacy of the minor child, we refer to her by her initials. *See, e.g.*, TEX. R. APP. P. 9.8.

[2] Amy testified that C.J. would turn sixteen in December of 2009.

his debts. Charles's attorney further argued that Charles would continue to be incarcerated until 2013 and claimed that his continued employment as an oil driller was speculative.

The trial court granted the divorce and ordered a child support obligation in the amount of $686.00 per month based upon the $26.00 per hour wage. The trial court considered, among other things, that predicating child support on Charles's prior earnings was appropriate because, although Charles was incarcerated five months before Amy initiated divorce proceedings, "[he] was the one that committed the assault and put himself, voluntarily, being at the situation where he is at." This appeal followed.

## II. DISCUSSION

### A. Standard of Review and Applicable Law

A trial court has broad discretion to determine child support awards within the guidelines of the family code. TEX. FAM. CODE ANN. § 154.121 (Vernon 2008); *Reyes v. Reyes*, 946 S.W.2d 627, 629 (Tex. App.–Waco 1997, no pet.). "However, as the guidelines are merely advisory, the Code also allows the trial court the discretion to set a child support order outside the guidelines." *Reyes*, 946 S.W.2d at 629. An order regarding child support will not be overturned unless the trial court clearly abused its discretion. *Rodriguez v. Rodriguez*, 860 S.W.2d 414, 415 (Tex. 1993). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles, or, in other words, whether the act was arbitrary or unreasonable. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). In this case, the trial court made no findings of fact, and Charles requested none. *See* TEX. R. CIV. P. 296, 297. "Therefore, we assume the trial court found all facts to support the judgment, and we will affirm the judgment if there is any legal theory supported by the record to justify it." *See In re M.M.*, 980 S.W.2d 699, 700 (Tex. App.–San Antonio 1998, no pet.) (citing *Southwest Livestock & Trucking Co. v.*

3

*Dooley*, 884 S.W.2d 805, 807-08 (Tex. App.–San Antonio 1994, writ denied)).

For purposes of determining child support liability, the trial court shall calculate net resources, including all wage and salary income and other compensation for personal services, interest, dividends and royalty income, self-employment income, net rental income, and all other income actually being received. TEX. FAM. CODE ANN. § 154.062(a), (b) (Vernon Supp. 2009). In the absence of evidence of the wage and salary income of a party, the court shall presume that the party has wages or salary equal to the federal minimum wage for a forty-hour week. *Id*. § 154.068 (Vernon 2008).

Section 154.066 of the Texas Family Code provides that a trial court may order a parent to pay more child support than the guidelines indicate if the parent could potentially earn more money but has intentionally chosen not to. *Id*. § 154.066 (Vernon 2008); *Reyes*, 946 S.W.2d at 629. To make a finding of intentional underemployment or unemployment, there must be evidence that the parent reduced his income for the purpose of decreasing his child support payment. *See Zorilla v. Wahid*, 83 S.W.3d 247, 253 (Tex. App.–Corpus Christi 2002, no pet.); *In re P.J.H.*, 25 S.W.3d 402, 405 (Tex. App.–Fort Worth 2000, no pet.). The requisite intent, or lack thereof, to be underemployed or unemployed for the purpose of determining a child support award may be inferred from such circumstances as the parent's education, economic adversities, business reversals, business background, and earning potential. *Zorilla*, 83 S.W.3d at 253 (citing *In re Davis*, 30 S.W.3d 609, 617 (Tex. App.–Texarkana 2000, no pet.)).

B.    **Voluntary Unemployment**

The issue of whether incarceration can be characterized as "voluntary unemployment" has been discussed, but never decided, by several appellate courts. *See In re M.M.*, 980 S.W.2d at 701 n.2; *Reyes*, 946 S.W.2d at 629; *Hollifield v. Hollifield*, 925

4

S.W.2d 153, 156 (Tex. App.–Austin 1996, no writ); *see also Slaughter v. Slaughter*, No.

13-99-497-CV, 2001 Tex. App. LEXIS 2783, at **6-8 (Tex. App.–Corpus Christi 2001, pet.

denied) (mem. op., not designated for publication). For example, in *Hollifield*, the Austin

Court of Appeals noted the following:

> Appellant also maintains that his incarceration cannot be characterized as "voluntary." Appellant contends that while he might have intentionally or voluntarily committed a crime, he hardly intended to get caught or volunteered to go to prison . . . . Assuming, without deciding, that appellant was in fact involuntarily unemployed, this fact alone would not require the trial court to rescind appellant's support obligations. In addition to appellant's unemployment, the court was entitled to consider the nature of his crime . . . , the financial status of his children, as well as their special needs . . . .

925 S.W.2d at 156.[3]

Here, the trial court held that Charles was voluntarily unemployed because he

"voluntarily" assaulted Amy. We do not believe, however, that this is a case of voluntary

unemployment because the child support order at issue was not in place at the time

Charles committed the assault. In fact, Charles was incarcerated five months before Amy

filed for divorce, and nine months before the divorce hearing where the child support award

was determined. There is no evidence that Charles had any "intent" to be underemployed

or unemployed for the purpose of decreasing a child support award. *See Zorilla*, 83

S.W.3d at 253. We hold that the trial court erred by considering voluntary unemployment

as a factor in the determination of Charles's child support obligation.

---

[2] We recognize that *Hollifield* deals with the modification, rather than the initial issuance, of a child support order. However, trial courts have wide discretion in considering both issues. *See Reyes v. Reyes*, 946 S.W.2d 627, 629 (Tex. App.–Waco 1997, no pet.) (holding that trial courts have broad discretion in determining child support awards); *Friermood v. Friermood*, 25 S.W.3d 758, 760 (Tex. App.–Houston [14th Dist.] 2000, no pet.) (concluding that the court retains the same broad discretion for child support modification orders).

## C.    Other Factors in Child Support Consideration

Notwithstanding the above analysis, we cannot say that the trial court abused its discretion when it based the child support order on the $26 per hour wage.   Trial courts consider several factors, not just voluntary unemployment or underemployment, to determine child support.  Notably, section 154.123(b)(17) of the family code allows trial courts to deviate from the guidelines for "any other reason consistent with the best interest of the child, taking into consideration the circumstances of the parents."  *See* TEX. FAM. CODE ANN. § 154.123(b)(17) (Vernon 2008).[4]

The record here demonstrates that the court considered evidence on other relevant issues to support the judgment.   *Hollifield*, 925 S.W.2d at 156; *see* TEX. FAM. CODE ANN. § 154.123 (Vernon 2008) (delineating seventeen additional factors courts should consider in determining child support).   For example, the court heard that Charles:  (1) was an experienced directional driller who had worked for several drilling companies in the area; (2) regularly worked overtime as a driller, which supplemented his income; (3) earned similar wages at all of the drilling companies for which he had worked; and (4) was scheduled to be released from prison in 2013.  We note that the court pointed out to Amy that she would be able to "enforce child support when [Charles] gets out."  The ability to collect an arrearage is a recognized consideration in child support cases.  *In re M.M.*, 980 S.W.2d at 701; *see also Slaughter*, 2001 Tex. App. LEXIS 2783, at *8. "[A]lthough [the obligor] may not be able to make support payments now, the assessment makes it possible . . . to collect arrearages, should his financial condition improve in the future."  *In re M.M.*, 980 S.W.2d at 701.  We also note that C.J. was nearly sixteen at the time of the hearing.

---

[4] The dissent overlooks this provision which gives the trial court broad discretion in determining child support awards.

The trial court could have considered that Charles's support obligation would be limited to two years only, when C.J. reached the age of majority. All of these factors supported the court's child support award for C.J. *Id.* at 700.

Charles argues his child support obligation "should be based upon a [forty] hour work week at the federal minimum wage because [the] evidence presented shows that [Charles] is incarcerated . . . , has no employment or earning ability, has no assets, and is in debt." In other words, Charles claims that he is not "actually receiving" any income upon which to base a child support order. *See* TEX. FAM. CODE ANN. § 154.062(b)(5) (Vernon Supp. 2009). However, although trial courts may presume that a party earns the minimum wage for a forty-hour work week in the absence of evidence regarding an obligor's resources, *see id.* § 154.068 (Vernon 2008), here there was testimony regarding Charles's earning potential.[5] Courts may take a parent's earning potential into account when determining the amount of child support the parent must pay. *See generally Pharo v. Trice*, 711 S.W.2d 282, 284 (Tex. App.–Dallas 1986, no writ); *Wetzel v. Wetzel*, 514 S.W.2d 283, 285 (Tex. Civ. App.–San Antonio 1974, no writ). "The duty to support is not limited to a parent's ability to pay from current earnings, but extends to his or her financial ability to pay from any and all sources that might be available." *Pharo*, 711 S.W.2d at 284. In light of the foregoing, the trial court was under no obligation to resort to the minimum wage presumption in the family code.[6]

---

[5] The dissent holds that Charles's $26 per hour earning potential should not be considered "evidence," as we have determined that Charles was not voluntarily unemployed. This lack of evidence, they argue, should therefore trigger the minimum wage presumption in section 154.068. *See* TEX. FAM. CODE ANN. § 154.068 (Vernon 2008). However, we find no authority to support the contention that earning potential should only be considered in cases of voluntary unemployment.

[6] We also note that there is no legal presumption that an inmate has no assets. *See In re A.P.*, 46 S.W.3d 347, 359 (Tex. App.–Corpus Christi 2001, no pet.); *see also Koenig v. DeBerry*, No. 03-09-00252-CV, 2010 Tex. App. LEXIS 1926, at **15-16 (Tex. App.–Austin Mar. 17, 2010, no pet.) (mem. op.). Such a presumption "would not be in the best interests of children and parents seeking child support." *In re M.M.*,

We cannot conclude that the trial court abused its discretion when it based Charles's child support obligation on the $26.00 per hour wage he earned prior to his incarceration. The issue of voluntary unemployment aside, there are facts in the record to support the trial court's award, and we must affirm the judgment if there is any legal theory in the record to support it. *See In re M.M.*, 980 S.W.2d at 700. The trial court had broad discretion to set aside the advisory guidelines in the Texas Family Code to determine Charles's child support obligation, and we conclude that the more generous award was in C.J.'s best interests. We overrule Charles's sole issue.

### III. Conclusion

We affirm.

_____
DORI CONTRERAS GARZA
Justice

Dissenting Memorandum Opinion
by Justice Linda R. Yañez.

Delivered and filed the
25th day of August, 2010.

---

980 S.W.2d 699, 700 (Tex. App.–San Antonio 1998, no pet.) (citing *Reyes*, 946 S.W.2d at 630).

8