**Claribel LOVELACE et al., Appellants,**

v.

**BANDERA CEMETERY ASSOCIATION et al., Appellees.**

No. 15661.

Court of Civil Appeals of Texas, San Antonio.

Nov. 17, 1976.

Rehearing Denied Dec. 15, 1976.

B. Allen Cumbie, Hollon & Marion, Boerne, for appellants.

Darden & Wehmeyer, Bandera, Bill Price and Al De La Garza, Anthony T. Sortino, San Antonio, for appellees.

BARROW, Chief Justice.

Appellants, Claribel Lovelace and Christabel B. Schuiteman, have perfected their appeal from a final judgment entered after a nonjury trial which denied appellants' application for a declaratory judgment that five lots purchased in Indian Waters Subdivision by appellees, the Bandera Cemetery Association, could not be used as a cemetery, and refused to enjoin appellees, the Association, its officers, and members from such planned use of the lots.

Appellants complain of this judgment by twenty points of error. All of these points relate to their basic contention that there is no evidence or, in the alternative, the evidence is factually insufficient to support the judgment. It is therefore urged that it was an abuse of discretion for the trial court to refuse to enjoin the admitted plan of appellees to use the five lots for cemetery purposes contrary to the restrictions of this subdivision and to deny the declaratory judgment upholding the restrictions.

The trial court made numerous findings of fact and conclusions of law in support of this judgment. Appellees concede that several fact findings are without support in the evidence, and it is obvious that many others are evidentiary. We will therefore consider only those findings relevant to our determination of the decisive legal questions.

On January 14, 1946, a plat, together with the Building Restrictions and Subdivision Plan of Indian Waters Subdivision, was recorded in the Deed Records of Bandera County by the owner, Hubert W. Green. This subdivision, consisting of 357.4 acres near the city of Bandera, was designed for the stated purposes "of residence and recreation of the highest quality." Limited business use was to be permitted within the subdivision for the convenience and service of the individual lot owners. Over 100 of the 305 lots were sold and approximately 49 residences have been constructed in the subdivision, most of which are located in one area of the subdivision. There have been no commercial structures constructed on residential lots.

In 1960 Mrs. Claribel Lovelace purchased all unsold lots in the subdivision from the estate of Mrs. John R. Brinkley, who had acquired the interest of the original owner, Hubert W. Green. Mrs. Lovelace now owns about 200 lots and, with the help of her daughter, Mrs. Christabel B. Schuiteman, is now the developer of Indian Waters. Mrs. Schuiteman, who owns 12 of the lots individually, helps her mother as secretary, bookkeeper, and a salesperson. She is the heir apparent of Mrs. Lovelace and the evidence fairly supports the assumption that both appellants believe that Mrs. Schuiteman will eventually become the owner of the subdivision.

Bandera Cemetery Association owns Lots 15–19, Block 6, which are located near the part of the subdivision that has been developed. Lots 17, 18, and 19 were acquired by it on July 21, 1971, by conveyance from Loraine S. Ford. Lots 15 and 16 were conveyed to the Association by Jimmie Ray Hill on October 1, 1975. Both deeds ex-

pressly recite that such conveyance is subject to the restrictions and reservations contained in the recorded dedication and Subdivision Plan of Indian Waters. All but Lot 19 are restricted to residential use. Mrs. Schuiteman owns Lots 20–24 in Block 6, which lots may be used for business purposes. A mobile home is located on Lot 24 and is used as a subdivision sales office and as a temporary residence for the Schuitemans.

The judgment of the trial court is based primarily on two propositions: 1. Appellants are not entitled to equitable relief because of their material violations of the Subdivision Plan and restrictions. 2. These violations created a material change in the original scheme or plan of the subdivider.

We should recognize at the outset that Mrs. Lovelace is before the court in two capacities. She individually owns a substantial number of lots in the subdivision, and therefore has a personal pecuniary interest. Also, she is now the developer and owner of the subdivision and in that capacity is expressly authorized by the Subdivision Plan to bring an action to prevent the violation of any of the covenants or restrictions of the Plan. The trial court found that Mrs. Schuiteman had fully participated and acquiesced in the acts of her mother, Mrs. Lovelace, and therefore stands in the same shoes inasfar as her right to equitable relief is concerned. This finding and conclusion is fully supported by the testimony of appellants.

The primary complaint which forms the basis of the court's conclusion that there has been a material change in the original scheme or plan of the subdivider relates to the question of the present existence and authority of the Building Plan Committee as called for in the Subdivision Plan. The Plan provides in part:

The Building Plan Committee during the first seven years after the filing of this subdivision plan and plat shall be Hubert W. Green and Chas. D. Lovelace, or the survivor of them, final decision in any case to be made by Hubert W. Green, or his assigns. After the expiration of said

seven years, a new Building Plan Committee may be elected by the then individual owners of lots or tracts within the subdivision. Three members shall constitute said new Committee, all of whom shall be bona fide lot or tract owners, and they shall be elected for such length of time and with such method of succession as may be determined by the lot or tract owners, when the election is held. At such election, a lot or tract owner shall be entitled to one vote for each lot or tract owned by him. Should such new Building Plan Committee not be elected or function effectively and promptly, the original Committee herein named shall continue to act.

Both Mr. Green and Mr. Lovelace are now dead; a new Building Plan Committee has never been elected; and, by her own admission, Mrs. Lovelace has acted as the Committee, either alone or with the advice of her daughter or others selected by herself since she purchased the property in 1960. Most of Mrs. Lovelace's acts in this capacity have been informal; however, the evidence establishes that she has continually exercised the duties and assumed the authority granted the Committee in the Subdivision Plan.

Primarily, the Committee is granted executive or enforcing authority to determine whether or not a proposed structure complies with the general scheme of development adopted for the subdivision. It is required that all proposed improvements be submitted to the Committee for written approval before construction is begun. Although Mrs. Lovelace seldom granted written approval, all plans for new construction were checked by her and in the two instances where the plans did not conform to the general scheme of the subdivision, she filed suit to stop substandard construction. In all other instances, the homes as constructed fully meet the general scheme or plan of the subdivision.

 It is our opinion that Mrs. Lovelace was justified as the owner of the subdivision to function as the Committee until a new committee was elected in accordance

with the provisions of the Subdivision Plan. *See Johnson v. Linton*, 491 S.W.2d 189 (Tex. Civ.App.—Dallas 1973, no writ). Nevertheless, the Committee, as such, would have no authority to create new restrictive covenants or to cancel and nullify existing ones. *Johnson v. Dick*, 281 S.W.2d 171 (Tex.Civ. App.—San Antonio 1955, no writ). Therefore, the authority of Mrs. Lovelace to designate herself as the Committee, and if so, the extent of her authority, is immaterial to a determination of this suit. More importantly, the existence or non-existence of the Committee would not have any bearing on the validity of the subdivision restrictions.

 The trial court found that Mrs. Lovelace had violated the subdivision restrictions in several specific ways. She had on occasion leased part of the area in the subdivision for hunting or for grazing of cattle. This was done on a temporary basis and involved an area of undeveloped property in the southeastern part of the subdivision. It cannot be said that this temporary use of undeveloped property would be so inconsistent with the general plan or scheme of this subdivision as to nullify the restrictions in areas unaffected by such violations. Nor would the presence of an abandoned shack in an undeveloped area of the subdivision, or the location of the mobile home on a commercial lot for use as a temporary sales office and temporary residence of the Schuitemans, constitute such material violations as to support a conclusion that the general scheme or plan of the subdivision had been abandoned.[1] *Cf. Hemphill v. Cayce*, 197 S.W.2d 137 (Tex.Civ. App.—Fort Worth 1946, no writ).

 A more difficult question is presented by the action of Mrs. Lovelace in platting Block 7A, located three lots from those owned by appellees, into a site for a future cemetery to be known as Greenlawn Cemetery. Although Block 7A is now owned by Mrs. Lovelace's granddaughter, the evidence fairly supports the finding of the trial court that this cemetery was conceived, developed, and controlled by Mrs. Lovelace. In fact, Mrs. Lovelace had some negotiations with appellees over sale of a tract in this area for use as a cemetery. The trial court properly concluded from this action that appellants cannot personally be heard to complain of the development of a cemetery, per se, in the subdivision.

There is one important distinction between Block 7A and four of the five lots owned by the Association insofar as its designation and potential use as a cemetery. All but Lot 19 of the Association's lots are restricted to residential use, whereas commercial use is permitted on Block 7A. The Subdivision Plan does not permit a cemetery to be developed on the lots restricted to residential use.[2] Neither Mrs. Lovelace, as owner of the subdivision, nor the Building Committee, would have the authority to change the use of these four lots from this restricted use. The evidence is uncontradicted that the officers and directors of the Association had actual as well as constructive notice of this restricted use prior to acquiring the lots.

 We conclude from this record that while neither Mrs. Lovelace nor Mrs. Schuiteman is entitled to the equitable relief of injunction because of their unclean hands,[3] the trial court erred in denying the application for declaratory judgment. An action for declaratory judgment is an ap-

---

1. Mrs. Lovelace has also filed an amended plat whereby she seeks to deny future purchasers of subdivision tracts, as distinguished from prior purchasers, from using certain designated recreational areas. The validity of this amended plat is not before us and we do not consider same.

2. The Subdivision Plan provides in part:
 All tracts or lots in Indian Waters shall after purchase from Subdivision owner be used by purchasers, and those claiming under them, for individual and family residence purposes only, except when some other use is expressly allowed as hereinafter provided. 'Residence' and 'residence purposes' shall include the construction of recreation lodges and country homes and the normal uses applicable thereto.

3. It is an established rule that one who seeks equity must come with clean hands. *See Omohundro v. Matthews*, 161 Tex. 367, 341 S.W.2d 401 (1960).

propriate means for seeking a determination of the validity, applicability, or enforceability of restrictions. *McGuire v. Davis*, 483 S.W.2d 553 (Tex.Civ.App.—Waco 1972, writ ref'd n. r. e.). There is no evidence to support the trial court's conclusion that there has been such a material change in the original scheme or plan of Indian Waters Subdivision as to invalidate the Subdivision Plan. This scheme has been fully implemented and the purchasers of lots in the subdivision are entitled to rely on the restrictions and reservations set forth in the recorded plan of the subdivision. Accordingly, Lots 15–18 of Block 6 are restricted to residential use while such other use may be made of Lot 19 as is allowed by said Plan.

The judgment of the trial court is reformed to provide that appellees' use of Lots 15–18 of Block 6 is restricted to use as residences or for residence purposes. In all other respects, the judgment is affirmed. The costs of this appeal are taxed one-half against the appellants and one-half against appellees.