

# NUMBER 13-07-070-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

CARL L. WELLS AND LISA A. WELLS,                                    Appellants,

v.

LOMITA SUBDIVISION, ARCHITECTURAL
CONTROL COMMITTEE,                                                  Appellee.

## On appeal from the 138th District Court of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Benavides**
**Memorandum Opinion by Justice Garza**

This suit involves the enforceability and the enforcement of restrictive covenants governing the Lomita Subdivision in Cameron County, Texas. Initially, appellee, Lomita Architectural Control Committee ("Committee"), sued appellants, Carl and Lisa Wells ("the Wellses"), for injunctive relief, claiming that they had violated the subdivision's covenants.

The Wells brought a counterclaim against, among others, Committee members Gordon and Maria Briscoe ("the Briscoes"), for declaratory relief and civil damages for violating the covenants and to declare the subdivision covenants invalid. The Wellses take issue with the trial court's granting of no-evidence and traditional motions for summary judgment filed jointly by the Committee and the Briscoes as to the Wellses' counterclaim for declaratory relief. By one issue, the Wellses contend that the trial court erred in granting the joint motions for summary judgment filed by the Committee and the Briscoes because material fact issues exist. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Wellses owned two lots within the Lomita Subdivision in Cameron County, Texas. After the Wellses began construction on their two lots, the Committee was informed that the Wellses were in violation of various provisions of sections 22, 44, 47, and 50(A) of the subdivision covenants. These provisions provided, in relevant part, the following:

### DRIVEWAYS AND PARKING AREAS

22. All driveways and parking areas shall be constructed of Portland cement concrete, asphalt, brick, or clay tile. Caliche, gravel, dirt or grass driveways or parking areas are not permitted. Lot Owners shall provide adequate parking areas for family members and guests. Lot Owners shall place at each road ditch crossing an eighteen (18") inch culvert equipped with tapered concrete caps. The layout of the driveways and parking areas shall be aesthetically pleasing. . . .

. . . .

### ANIMALS

44. Other than dogs, cats or other common household pets not being raised or bred for commercial purposes, no animals of any kind may be raised,

2

bred, kept or maintained on any Lot, except as provided in Paragraph 45. Dog houses, rabbit hutches, and all other pens, shelters, and enclosures for household pets shall be located behind the principal dwelling and adequately screened by an approved fence so as not to be seen from public roads or neighboring Lots. . . .

_____. . . .

## TRASH, RUBBISH AND GARBAGE

47. No trash, rubbish, or debris of any kind shall be kept or allowed to remain on any Lot.  Each Lot Owner or occupant shall remove such prohibited material from his Lot at regular intervals at his expense.  Prior to such removal, all such prohibited matter shall be placed in sanitary refuse containers in an area adequately screened by planting or fencing so as not to be seen from neighboring Lots or public roads.  Reasonable amounts of contruction materials and equipment may be stored upon a Lot for reasonable periods of time during construction of improvements. . . .

. . . .

## GENERAL RESTRICTIONS

50. (A) No inoperable vehicle, boat, trailer, recreational vehicle, camping unit, bus, commercial-use truck, self-propelled or towable machinery or equipment, or any other thing deemed objectionable by the Committee, shall be permitted to be parked or stored on any Lot except in an approved enclosed structure or behind an approved fence so as not to be visible from public roads or adjacent Lots; provided, that during the building of improvements on a Lot, necessary construction vehicles may be parked thereon. . . .

Specifically, the Committee noted that (1) the Wellses failed to install an eighteen-inch culvert with tapered concrete ends for one of the two ditch crossings on the Wellses property;[1] and (2) the Wellses had a camper, a boat with a trailer, building materials, and a dog house stored in plain view from public road and adjacent lots, in violation of the

_____

[1] The Wellses received permission from the Committee to install a circular driveway on their property. Construction began in August 2002, and the construction company proceeded to create two ditch crossings for the circular driveway.  However, the Wellses changed their minds and only decided to use one of the ditch crossings for their driveway.  As a result, the remaining ditch crossing was unpaved and did not have the required eighteen inch culvert with tapered concrete ends.

3

subdivision covenants. The Committee sent three letters, dated March 26, 2004, May 10, 2004, and May 26, 2004, to the Wellses as notification of the violations of the covenants. The record indicates that the Wellses failed to respond to any of the letters from the Committee and refused to cure the alleged violations.

The Committee filed its original petition against the Wellses on July 9, 2004. In its original petition, the Committee sought injunctive relief for the Wellses' violations of the subdivision covenants. The Wellses filed an amended answer on August 5, 2004, denying all of the Committee's allegations and asserting that the subdivision covenants were ambiguous and were "unenforceable and/or invalid because of Waiver, Plaintiff's unclean hands and under equitable principles. . . ." The Wellses further stated a claim for the recovery of attorney's fees and court costs from the Committee.

Subsequently, on November 19, 2004, the Wellses filed a counterclaim for declaratory relief pursuant to chapter 37 of the Texas Civil Practice and Remedies Code against the Committee, alleging that the subdivision covenants were unenforceable and that the Committee, in exercising its discretion, enforced the covenants in an "arbitrary, capricious and/or discriminatory" way. *See* TEX. CIV. PRAC. & REM. CODE. ANN. §§ 37.009 (Vernon 1997). The Wellses, in support of their declaratory judgment action, asserted that the Briscoes—members of the Committee—were themselves in violation of sections 12, 47, 50, and 53 of the subdivision's covenants.[2] Specifically, the Wellses stated that the

---

[2] Sections 12 and 53 of the subdivision covenants provided, in relevant part, the following:

FULLY PROTECTED RESIDENTIAL AREA

12. Each Lot shall be used solely and exclusively as the personal residence of a single family, and shall not be used for any industrial, commercial or other business purpose. . . .

Briscoes: (1) violated section 12 by allowing their lot to be used as a personal residence by others; (2) violated section 47 by allowing trash, rubbish, and debris to be kept on their lot; (3) violated section 50 by allowing an inoperable vehicle, a trailer, on their lot that was visible from the public roads and the adjoining lots; and (4) violated section 53 "by having a temporary residence—a trailer used by five or six individuals for their residence." Additionally, the Wellses requested civil damages and attorney's fees pursuant to section 37.009 of the Uniform Declaratory Judgments Act and section 38.001 of the Texas Civil Practice and Remedies Code. *See id.* §§ 37.009, 38.001 (Vernon 1997).

On March 30, 2006, the Committee and the Briscoes filed joint motions for summary judgment on traditional and no-evidence grounds. In their motions, they asserted that they were entitled to a judgment as a matter of law because: (1) the Wellses failed to join all necessary, interested, or indispensable parties as required by section 37.006 of the civil practice and remedies code, *see id.* § 37.006 (Vernon 1997); (2) the Wellses improperly recast their defenses and affirmative defenses to the Committee's original claims as affirmative claims for declaratory relief; (3) the Wellses have no justiciable controversy that is separate or distinguishable from their defenses in the Committee's underlying suit, and, therefore, the Wellses' claims are moot; (4) the Committee is not a proper party to the Wellses' suit for declaratory relief; (5) the Committee did not violate sections 12, 47, 50, or 53 of the subdivision covenants because it owns no lots; (6) the Committee has not

---

GENERAL RESTRICTIONS

. . . .

53. No structure of a temporary nature, or trailer, mobile home, tent, shack, garage, barn or other outbuilding may be used as a temporary or permanent residence.

5

been arbitrary or capricious in enforcing the covenants; (7) the Briscoes did not violate sections 12, 47, 50, or 53 of the subdivision covenants; and (8) the subdivision covenants waive and bar claims against the Briscoes for enforcing or failing to enforce the covenants.

In response to a plea for abatement filed by the Committee and the Briscoes on March 20, 2006, the trial court abated the suit by an order signed on May 17, 2006. The trial court ordered the Wellses to join all lot owners in the Lomita Subdivision as third-party defendants to their action for declaratory relief.

On May 22, 2006, the Wellses filed a second amended counterclaim for declaratory judgment and damages. In their counterclaim, the Wellses made the same legal contentions as in their previously filed cross-action and claimed that they were entitled to civil damages and attorney's fees pursuant to chapter 37 of the Uniform Declaratory Judgments Act, Section 38.001 of the Texas Civil Practice and Remedies Code, and sections 5.006 and 202.004 of the property code. *See id.* § 37.009; *see also* TEX. PROP. CODE ANN. §§ 5.006, 202.004 (Vernon 2004). In addition, the Wellses indicated that the necessary parties would be served with citation as third-party defendants to their action for declaratory relief.[3]

The Committee and the Briscoes jointly filed amended traditional and no-evidence motions for summary judgment on July 14, 2006, making the same contentions as in their

---

[3] The necessary parties to the Wellses' action for declaratory relief were: (1) Dr. and Mrs. Joseph Leslie Pean; (2) Mr. and Mrs. Greg Garcia; (3) Mr. and Mrs. Richard Ullrich; (4) Mrs. Maricela Garcia; (5) Mr. and Mrs. C.A. Naylor; (6) Mr. and Mrs. Joel N. Reagan; (7) Mr. and Mrs. Manuel Banda, Jr.; (8) Mr. and Mrs. John Kram, III; (9) Mr. and Mrs. Anselmo Davila; (10) Mr. and Mrs. Samuel Davila; and (11) Mr. and Mrs. Jesus P. Garza. The Wellses noted in their second amended counterclaim that these parties were all of the lot owners in the Lomita Subdivision. On appeal, the Committee and the Briscoes note that the Wellses neglected to serve Brad Bierstadt, the Wellses' next-door neighbor. The record contains original answers filed by the Ullirchs, the Naylors, Mr. and Mrs. Samuel Davila, the Bandas, Mr. and Mrs. Anselmo Davila, and the Reagans. These individuals are not parties to this appeal.

original motions for summary judgment except for the contention that the Wellses had not properly joined all relevant parties.

On November 15, 2006, the trial court granted the amended motions for summary judgment jointly filed by the Committee and the Briscoes. In its order, the trial court determined that the Wellses should take nothing on their counterclaims against the Committee, the Briscoes, and all of the third party defendants.

On November 27, 2006, third-party defendants, Dr. and Mrs. Joseph Leslie Pean filed a motion to sever with the trial court requesting that the Wellses' claims against the all of the third-party defendants, including the Briscoes, be severed from the Wellses' counterclaims against the Committee and the Briscoes. The Wellses filed a motion for new trial, a motion to set aside the summary judgment order, and a motion for reconsideration on December 14, 2006. The trial court granted Peans' motion to sever and denied the Wellses' motion for new trial, motion to set aside the summary judgment order, and motion for reconsideration on January 9, 2007.[4] Subsequently, on January 25, 2007, the Wellses filed a request for findings of fact and conclusions of law with the trial court. *See* TEX. R. CIV. P. 296. The trial court did not provide findings of fact or conclusions of law. *See IKB Indus., Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 442 (Tex. 1997) (noting that a party is not entitled to findings of fact and conclusions of law following summary

---

[4] In its order granting the Peans' motion to sever, the trial court ordered that the Welles' counterclaims against the Committee and the Welles's counterclaims against all of the third-party defendants, including the Briscoes, be severed into a separate lawsuit. With respect to this lawsuit, the trial court noted that it "is now a final judgment which disposes of all claims between all parties in the severed cause number; it is intended to create a final and appealable judgment as to the claim adjudicated in the November 15, 2006 order." Therefore, this action is final and appealable. *See In re Burlington Coat Factory*, 167 S.W.3d 827, 830 (Tex. 2005); *Ritzell v. Espeche*, 87 S.W.3d 536, 538 (Tex. 2002); *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001) (holding that when the trial court resolves some claims by summary disposition, leaving other claims unresolved, the judgment is final if it unequivocally states it finally disposes of all claims).

7

judgment).  This appeal ensued.

## II. STANDARD OF REVIEW

### A. Traditional Motion for Summary Judgment

Under a traditional motion for summary judgment, the movant must establish that no material fact issue exists and that it is entitled to judgment as a matter of law.  TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002);  *Alaniz v. Hoyt*, 105 S.W.3d 330, 345 (Tex. App.–Corpus Christi 2003, no pet.); *Mowbray v. Avery*, 76 S.W.3d 663, 690 (Tex. App.–Corpus Christi 2002, pet. denied).  After the movant produces evidence sufficient to show it is entitled to summary judgment, the non-movant must then present evidence raising a fact issue.  *See Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996).

### B. No-Evidence Motion for Summary Judgment

Texas Rule of Civil Procedure 166a(i) provides that "a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof."  TEX. R. CIV. P. 166a(i).  The trial court must grant the motion if the non-movant does not produce summary judgment evidence raising a genuine issue of material fact on each element challenged.  *Id.*; *Mack Trucks v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006).  The non-movant must produce more than a scintilla of probative evidence to raise an issue of material fact.  *Oasis Oil Corp. v. Koch Ref. Co. L.P.*, 60 S.W.3d 248, 252 (Tex. App.–Corpus Christi 2001, pet. denied).  More than a scintilla of evidence exists when the evidence "rises to a level that would enable

8

reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). We "must examine the entire record in the light most favorable to the non-movant, indulging every reasonable inference and resolving any doubts against the motion." *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006) (per curiam); *see City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005). Moreover, "when a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (quoting *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989)).

## III. ANALYSIS

In their sole issue on appeal, the Wellses contend that the trial court erred in granting the traditional and no-evidence motions for summary judgment filed jointly by the Committee and the Briscoes. Specifically, the Wellses argue that material fact issues exist and that a justiciable controversy remains. The Wellses also contend that because the Committee exercised its discretionary enforcement power in an arbitrary, capricious, and discriminatory manner and because of waiver, unclean hands, and under other equitable principles, the covenants are unenforceable. Conversely, the Committee and the Briscoes contend that the Wellses have not provided sufficient evidence to establish that the subdivision's covenants were unenforceable. The Committee and the Briscoes argue that the Wellses' declaratory relief claims "were a ploy to transmute their defenses into a DJA [Uniform Declaratory Judgment Act] claim to threaten attorney's fees." Finally, the Committee and the Briscoes assert that the Wellses' claims must fail because the

9

summary judgment evidence demonstrates that the Wellses failed to provide the Committee with written notice of the alleged violations; therefore, the Wellses could not file a private suit to enforce the covenants.

As previously mentioned, the trial court granted summary judgment as to the Wellses' counterclaims for declaratory relief. The Wellses' contentions in their counterclaims for declaratory relief are virtually identical to the affirmative defenses raised in the underlying suit for injunctive relief.[5] Declaratory relief is not available to settle a dispute that is currently pending before a court. *BHP Petroleum Co., Inc. v. Millard*, 800 S.W.2d 838, 841 (Tex. 1990) ("The Declaratory Judgments Act is not available to settle disputes already pending before a court.") (internal quotations omitted); *Staff Ind., Inc. v. Hallmark Contracting, Inc.*, 846 S.W.2d 542, 547-48 (Tex. App.–Corpus Christi 1993, no writ) (same); *John Chezik Buick v. Friendly Chevrolet*, 749 S.W.2d 591, 594 (Tex. App.–Dallas 1988, writ denied) (concluding that a declaratory judgment counterclaim was not properly brought because the issue raised by the defendant was already before the court as part of the plaintiff's case). Furthermore, a defendant cannot institute a cross-action for declaratory relief if the cross-action fails to present a justiciable controversy separate from the underlying suit. *See Hitchcock Props., Inc. v. Levering*, 776 S.W.2d 236, 239 (Tex. App.–Houston [1st Dist.] 1989, writ denied); *see also Narisi v. Legend Diversified*

---

[5] The Wellses argued in their first amended answer that the subdivision covenants were ambiguous and that the subdivision covenants were "unenforceable and/or invalid because of Waiver, Plaintiff's unclean hands and under equitable principles. . . ." In their counterclaim for declaratory relief, the Wellses asserted that the subdivision covenants were unenforceable and that the Committee, in exercising its discretion, enforced the covenants in an "arbitrary, capricious and/or discriminatory" way. Essentially, the thrust of the Wellses' affirmative defenses to the underlying suit for injunctive relief and their counterclaims pertain to the same issues—the enforceability of the subdivision covenants and the Committee's enforcement of the covenants.

*Invs.*, 715 S.W.2d 49, 51-52 (Tex. App.–Dallas 1986, writ ref'd n.r.e.) (holding that a counterclaim brought under the DJA that presents no new controversies, but is engineered solely to pave an avenue for an award of attorney's fees, is not proper).

It is clear to this Court that the Wellses have refashioned their affirmative defenses in the underlying suit for injunctive relief as counterclaims for declaratory relief, which is improper.[6]  *See Millard*, 800 S.W.2d at 841; *Hitchcock*, 776 S.W.2d at 239; *Narisi*, 715 S.W.2d at 51-52.  As such, the Wellses failed to present a justiciable controversy to the trial court.  *See Hitchcock*, 776 S.W.2d at 239.  "A judicial decision reached without a case or controversy is an advisory opinion, which is barred by the separation of powers provision of the Texas Constitution."  *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 164 (Tex. 2004) (citing TEX. CONST. art. II, § 1; *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 223 (Tex. 2002); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993)).

Because we have found that the Wellses have not raised a justiciable controversy, we conclude that no fact issues remain on the Wellses' action for declaratory relief and that the trial court did not err in granting the motions for summary judgment jointly filed by the Committee and the Briscoes.  Accordingly, we overrule the Wellses' sole issue on appeal.

---

[6] In response to the contentions made by the Committee and the Briscoes that they have not raised a justiciable controversy, the Wellses argue that the holdings in *Lovelace v. Bandera Cemetery Association*, 545 S.W.2d 194, 197-98 (Tex. App.–San Antonio 1976, writ ref'd n.r.e.) and *McGuire v. Davis*, 483 S.W.2d 553, 555-56 (Tex. Civ. App.–Waco 1972, writ ref'd n.r.e.) provide that a declaratory judgment is the appropriate means for determining the validity, applicability, or enforceability of restrictions on the use of land. However, this contention was inadequately briefed.  *See* TEX. R. APP. P. 38.1.  In addition, the *Lovelace* and *McGuire* cases do not address a situation where a party converts its affirmative defenses in one suit into claims in a declaratory judgment action; therefore, they are not persuasive in addressing the issue of justiciability.  The *McGuire* case, in particular, states that "[t]o entitle a party to declaratory judgment relief, our Supreme Court has held that (a) there shall be a real controversy (sometimes called a "justiciable controversy") between the parties, which (b) will be actually determined by the judicial declaration sought." *McGuire*, 483 S.W.2d at 555.  Based on the record before us, the Wellses have not proven that a justiciable controversy exists to support their declaratory judgment action.

## IV. Conclusion

Having overruled the Wellses' sole issue on appeal, we affirm the judgment of the trial court.

_____
DORI CONTRERAS GARZA,
Justice

Memorandum Opinion delivered and
filed this the 29th day of April, 2008.